( Decided July 12th, 1865.)

---

JOSEPH W. PATTERSON and EDWARD PATTERSON, *vs.* EDWARD GELSTON.

LAND OFFICE: LANDS COVERED BY NAVIGABLE WATER.—Under the ACT OF 1862, CH. 129, no patent can be issued for lands covered by navigable waters, notwithstanding the warrant had been returned, and the composition money paid into the Treasury, before the passage of the Act.

LAND OFFICE: APPEALS: WHO MAY APPEAL FROM THE DECISION OF THE COMMISSIONER.—Every appellant must appear to be aggrieved by the judgment complained of, in order to be heard on his appeal; and ordinarily no one can be properly said to be aggrieved by a judgment, unless it be rendered upon a matter in which he has some interest or right of property.

But this rule is not applicable to cases arising in the Land Office, on application for patents. It seems to be settled by the long established usage and practice of that office, that "*a caveat will not be dismissed, merely because the caveator shows no interest.*"

Patterson, *et al.*, *vs.* Gelston.

MOALE *vs.* GITTINGS, 21 MD. REP., 135, IN PART OVERRULED.—Looking to the nature of the subject, a patent ought to be refused, if any good cause be shown against it, though the interest of the party making the objection should not be proved.

EVIDENCE: PRACTICE.—Where no exception is taken before the Commissioner of the Land Office, to the form of the proof, it is too late to raise the objection in the Court of Appeals.

RIPARIAN PROPRIETOR: LANDS FORMED BY ACCRETION.—Lands formed by accretion, belong to the riparian proprietor, and cannot be granted by the State as vacancy.

——: HARBOR OF BALTIMORE.—No patent *ought* to be granted for lands covered by navigable water in front of the lands of the riparian proprietor, even though the power of the State to grant such patent might be unquestionable, and the Act of 1862, had not been passed.

And this principle applies with more force to the case of lands lying in the harbor of Baltimore, where riparian owners have secured to themselves, under the Acts of 1745 and 1784, valuable rights and franchises of extending improvements into the water from their water-lots, and which it would be inequitable for the State to deprive them of, by granting to others the lands covered by water in front of their lots.

APPEAL from a decision of the Commissioner of the Land Office.

The facts of this case are sufficiently stated in the opinion of the Court :

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*I. Nevitt Steele* and *Reverdy Johnson, Jr.*, for appellants :

1st. Conceding the right of the State, since the decision of *Brown vs. Kennedy*, 5 *H. & J.*, 195, and *Casey vs. Inloes*, 1 *Gill*, 430, to grant land covered by navigable waters, so as to cut off water-front proprietors, in Baltimore city, from their franchise of improvement under the Acts of 1745, ch. 9, sec. 10, and 1784, ch. 39, sec. 6; yet it does not follow, that because the State may, it or its representative, the Land Office, must in all cases grant such applications, without reference to circumstances of equity or public policy attaching to given cases.

The object of the Acts of 1745 and 1784, was to foster the growth of the State's commercial emporium. They are laws peculiar to the city of Baltimore, and upon the faith of which long lines of valuable water-front have, for years past, been acquired, with a view to individual as well as to the commercial and general interests of the city and State.

In its organization, the tribunal we call the Land Office, is regulated by established rules and precedents, as all other Courts of Record. The Commissioner sits, within his sphere, as a Judge in Equity, and is expressly commissioned to "decree in all disputes according to equity and good conscience, and the principles established in Courts of Equity." Code, Art. 54, sec. 14. If, then, a case presents itself where, for a long series of years anterior to the application for such a certificate, a caveator has claimed and held a water-front which the patent may injuriously affect; has expended large sums with reference to his supposed unquestioned front; has followed out its extension, as he supposed his right under the Acts; has leased portions of the property covered by the caveatee's claim, upon the assumption that his title was beyond doubt; has authorized the erection of expensive wharves upon the property, without notice of any kind coming from the caveatee, whose application was quietly maturing in the Land Office, from which no notice issues in such cases to parties who may be injuriously affected; would not this present a case, under ordinary circumstances, where a Court of Equity would refuse relief sought by one in the situation of the caveatee.

This was the view entertained by Chancellor JOHNSON, in the case of *Chapman vs. Hoskins*, 2 *Md. Ch. Dec.*, 485. A case, too, not so strong as ours, because the equities in that instance were not so strong. That case arose with reference to the Potomac river, and the Chancellor overruled the application, on the ground that because the State may, it does not follow that it must grant such patents, where, as the patentee could not avail himself of the grant so as to interfere with public navigation and fishery, its only effect

would be to produce litigation between him and the riparian proprietor, as to the latter's right of accretion and alluvium.

If, then, we show title out of the State to the water-front represented by the "Sugar House lot," whether in the caveators or others, it matters not, (*Landholder's Assistant*, 449, 491; 4 *Md. Ch. Dec.*, 31,) and can show that that front extended, by accretion or otherwise, to the exterior or south face of Boston street; showing, too, the peculiar hardship to the caveators, who, without any notice from the caveatee, have been allowed by him, in their innocence, to treat the property as unquestionably theirs, to incur expense and erect improvements since his application, without a protest or word of warning escaping his lips; and further show the permit from the old board of Port Wardens to extend wharfing from all the lots, 655 to 658, a partial exercise of which indicates that the permit extended fully out to the old Port Warden's line; should not the Commissioner, or at least this Court, representing the State's eminent domain, with a view to the apparent justice of the case, as well as from sound principles of policy and good faith, refuse a patent for that portion of "Oversight" lying between its 19th line and 96th and 97th lines of Canton 1 and 2, and its 20th line and the Port Warden's line.

The payment of "caution" or "composition money," constitutes no contract or obligation on the part of the State to grant the patent. It is always paid, though the certificate be caveated, and, for cause shown, avoided. The State will refund, (*Landholder's Assistant*, 473,) and unquestionably, in this case, the whole amount of both "caution money," $4.80, and "composition money," $6.06, would readily be refunded the caveatee.

2nd. The decision, on the rehearing, trenched upon a valuable vested right of the caveators, or those under whom they claim, as the original riparian proprietors of the property between which and the Port Warden's line, the alleged vacancy is located.

The arbitration proceedings between Fell and Rogers, in 1783, affix to "Parker's Haven" the original water-front, beginning at the mouth of "Colletts," now Harris' creek, calling for and binding on the Patapsco river, to a point far westward of, therefore including that portion of the original front involved in this controversy. The tract of "Parker's Haven" we find out of the State, or the proprietor, as far back as 1686. When "Rogers' Addition to Baltimore town" came to be laid off, in 1783, the lots 654 to 658 were bounded by the river on the south, and Water, now Lancaster, street on the north, with Burk street on the west, and Cannon on the east. With the progress of time, by accretion or otherwise, this front extended southward, towards the Port Warden's line, until it reached the spot indicated by the location of the "Sugar House" property; that is to say, south of Hudson street. Of course all the riparian rights and franchises originally pertaining to or conferred on the water-front of the tract called "Parker's Haven," apply to the front as extended, whether under the original name, or under the style of "Rogers' Addition," or the "Sugar House" property.

The Act of 1745 gave certain rights, inchoate titles or franchises to water-front proprietors in Baltimore town. The Act of 1784, the town having been extended eastward by "Rogers' Addition," conferred similar rights and franchises on the same class of proprietors, in the extended limits of the town. Now we concede that under the judicial construction of the rights conferred by these statutes, a riparian proprietor has no vested title in the land covered by water on his immediate front, nor any vested title to improvements erected out of the water, until he has actually constructed the particular improvement. *Giraud vs. Hughes*, 1 *G. & J.*, 249.

But the question here is: 1st, whether he has any appreciable valuable rights under the Acts referred to, before any improvement made; and 2nd, what has been done to perfect those rights in the particular case.

The first of these inquiries has been definitely settled by the cases of *Wilson vs. Inloes*, 11 *G. & J.*, 351, and *Casey vs. Inloes*, 1 *Gill*, 430. *Wilson vs. Inloes* decided, that having the inchoate right or title, under these Acts, of improving from his water line out to the Port Warden's line, in that case the riparian owner of an elder patent, acquired title to all improvements made, or fast land formed, whether artificially or by natural process, between his front and the Port Warden's line.

In *Casey vs. Inloes*, the plaintiff and defendant claimed water-fronts at right angles to each other, the shore forming a curve or cove. The defendant claimed land formed in front of the original water-line of plaintiff's lessor, who was the elder patentee, by virtue of an assumed grant from long possession, and also from having extended a line of fence from his water-front into the water, and across the line of plaintiff's right of extension, under the Acts of 1745 and 1784.

The answer to this, on the part of the plaintiff, and sustained by the Court, was, that the fence was not such a character of improvement as gave to the defendant's front the title by possession, and consequently no conveyance could be assumed; that not having actually improved at the time of the defendant's erection of the fence, the plaintiff had not such a title under the Acts as to bring trespass, or other suit to prevent it; and further, the plaintiff having located the patent for "Bold Venture," which lay in the water at the date of the patent, and in front of the defendant's line of improvement, as claimed under the Acts, the Court, as to this, decided that it is competent for the State, before improvement made, to grant land covered by water in front of a water lot, and by such grant, when the patent has once issued, the riparian proprietor is shut out from his line of improvement.

But that decision in no wise impairs the previous one in *Wilson vs. Inloes;* on the contrary, it expressly refers to and confirms it; designating the inchoate right of improvement

under the Acts as a franchise and vested right, available against all but the actual grantee of the State.

3rd. Though the caveatee has an inchoate right under the certificate, it is, in effect, but an equity, though some of the cases term it an inchoate legal title, and it is only by the patent that the actual legal title vests. True, when the patent issues, it reverts so as to vest the title from the date of the certificate, but if a legal title in others intervenes between the issuing of the certificate and the date of the patent, the caveatee's so called inchoate legal title is of no avail. 2 *H. & McH.*, 459. 4 *Id.*, 423. 1 *H. & J.*, 299.

We have to deal here with principles of equity law, and none is better established than that, with equal equities, he who first acquires the legal title, shall prevail. Though at the date of the certificate for "Oversight," the fast land in the gore, and improvement on the south face of Boston street did not exist, yet, being created before the issuing of the patent, the legal title to them was at once drawn to the equal equity which the riparian proprietor enjoyed under the Acts of 1745, &c., and the legal title thus arising was sufficient to take the land covered by the filling and improvements out of the State, and consequently a complete bar to any patent issuing for that part of "Oversight."

4th. Nor can the caveatee lay any stress upon the omission of the codifiers to incorporate the Acts of 1745 and 1784 in the local laws for Baltimore city, on the ground that such omission is an implied repeal of those statutes. At the time of the adoption of the Code, a vast extent of water-front, in Baltimore city, acquired its principal value from the rights and franchises conferred by these Acts. In comparatively few localities had owners actually extended improvements out to the Port Warden's line, so as to have acquired full, vested legal title. The highest tribunal of the State had declared the privilege under these Acts to be a "vested right of improvement." (*Wilson vs. Inloes*,) "a franchise and vested right," (*Casey vs. Inloes*, 501,) and the very first Article in the Code, carefully recited in the

Patterson, *et al.*, *vs.* Gelston.

Act of 1860, by which it was adopted, declares that "its adoption shall not affect or impair any right vested or acquired and existing at the time of its adoption."

5th. But since the decision of the Commissioner in this case, the Legislature, seeing the great wrongs perpetrated, or likely continually to arise as to riparian proprietors, passed the Act of 3rd March 1862, entitled, "An Act to protect the rights of owners of lands bounding on the navigable waters of the State, and to prohibit the issuing of patents for lands covered by navigable waters."

The Acts of 1745 and 1784, as to Baltimore city, and the Act of 1835, ch. 168, which was a law applicable to the whole State, gave no certain rights or protection; for, under the decision of *Casey vs. Inloes*, and *Giraud vs. Hughes*, and the particular decision of the Land Commissioner, before an improvement was actually extended and perfected to the full extent of the riparian proprietor's right, any party could obtain a patent binding directly upon his waterfront, as to which a single step in advance would constitute him a trespasser.

The right of the Legislature to enact this as a general law in reference to the lands of the State, is not questioned; but its application to this case, after the decision of the Commissioner, we understand to be opposed, on the ground of its unconstitutionality, in trenching upon the judicial department of the Government.

The Act is not, in relation to this case, assailed as invalid, from being retrospective, or as divesting vested rights. If so, a sufficient answer would be presented by the cases of *Saterlee vs. Mathewson*, 2 *Pet.*, 380, and *Charles River Bridge vs. Warren Bridge*, 11 *Id.*, 420.

The presumption of its constitutionality is, of course, to prevail, unless the appellee can clearly establish the contrary. *Wright vs. Wright*, 2 *Md. Rep.*, 430. *Mayor, &c., vs. The State*, 15 *Id.*, 376. If the Act applies to the case at bar, then, even if we are wrong in our views of the case upon its merits, the appellee's claim must fail, because no patent can issue.

We have seen that as far back as 1686, the State, or the proprietor, had granted a patent for the tract termed "Park-er's Haven," which called for and bounded on the Patapsco River, (*Carroll vs. Norwood,* 5 *H. & J.,* 163,) from the mouth of "Harris" or "Collett's Creek," westward. To that water front, peculiar common law advantages pertain-ed, the right of accretion and alluvium, which was, of course, known to the grantor, and formed, by implication, a part of the grant. On the extension of that front, the State subsequently, in an enlarged public policy, conferred additional and very valuable rights and franchises by the special Acts of 1745 and 1784. A case arises, or we may assume a hundred similar cases, where the Commissioner has decided adversely to the common law rights of the State's prior grantees, as well as to their peculiar franchises under these local laws—the title is still within the grasp of the State. Has it not a right, is it not bound in justice and fair dealing, as well as from high motives of public policy, to intervene for the protection of its prior grantees?

The Legislature were perfectly aware of the bearing of the Act on the case at bar, and declined inserting a clause intended to except it from the operation of the law. The Act, as now on the statute book, passed with a view of pro-tecting all who were likely to suffer from the State not having been before apprised of the hardships to which its prior grantees were exposed.

If the State had the unquestioned right to grant the fran-chise, it would seem to follow that it has an equal right to protect it, so long as it is not divested of its title to the vacancy claimed by the patent having issued to the cavea-tee. If, in so doing, its action may happen to clash with a judicial decision, that fact alone does not necessarily in-validate the legislative action. It in no way assimilates itself to that class of cases where the Legislature has clearly transcended its proper limits to annul deeds or final decrees, or extend time for appeals. *Benett vs. Oliver,* 7 *G. & J.,* 191. In this case, the State, in protecting the franchise

conferred upon its prior grantees, was acting within its proper legitimate sphere; and while confining itself to its constitutional limits, each department of the Government is supreme and uncontrollable; its action not impugnable, though clashing in its operation with some co-ordinate branch of the Government. *Wright vs. Wright*, 2 *Md. Rep.*, 431. *Mayor, &c., vs. State*, 15 *Md. Rep.*, 377.

*Wm. Schley* and *Thales A. Linthicum*, for the appellee.

1st. The appellants have no right to prosecute this appeal. They have no title; nor have they shown any color of title. In no just sense can it be said that they were aggrieved by the judgment of the Land Commissioner. And the right of appeal is expressly limited to "parties aggrieved." Code, Art. 5, sec. 46, and Art. 54, sec. 1. This appeal could only lie, when given by statute. *Durousseau vs. U. S.*, 6 *Cranch*, 314. *Ringgold's case*, 1 *Bl.*, 17. *Johnson vs. McCabe*, 6 *H. & J.*, 302.

The Appellate Court must judge of the right of appeal. Case last cited, and 11 *G. & J.*, 137, 143. See, also, *Hanson vs. Worthington*, 12 *Md. Rep.*, 443. 1 Code, Art. 5, sec. 46. *Gittings vs. Moale*, 21 *Md. Rep.*, 135.

The right of extending improvements or wharfs into the harbor of Baltimore, under the ordinances of the city, is a *franchise*, a *vested right*, peculiar in its nature, a *quasi* property, of which the owner of the water lot cannot be lawfully deprived without his consent. And if any other person, without the authority or consent of the owner, makes such improvement or extension, no interest or estate in the improvement vests in the improver, but it becomes the property and estate of the owner of the purchase. *Casey vs. Inloes*, 1 *Gill*, 497, 501. 1 Code, 704, Art. 98, sec. 21.

2nd. The right of appeal, by the same Article and section, is made conditional. Concurrently with taking the appeal, the reasons therefor must be filed. 1 Code, Art. 54, sec. 1. In analogy to the requisitions of an answer, as a condition precedent to a right of appeal from an order

granting an injunction, these reasons must be sufficient. *Keighler vs. The Savage Man. Co.*, 12 *Md. Rep.*, 412. And it will be insisted, that on this appeal, no other reasons, if any there be, can be assigned for reversal, than those which are filed. They are in the nature of exceptions to the sufficiency of the averment of a bill; to the admissibility of evidence; to an auditor's account, &c.

3rd. The first reason assigned by the appellant is immaterial. It raises an abstract question. Whatever views may have led to the judgment pronounced by the Commissioner, this Court will not reverse, unless the judgment itself be erroneous. If wrong reasoning has led to a right judgment, it is impossible to say, that the judgment itself is wrong, merely because the true reasons were not stated.

The appeal is always taken from the judgment, not from the opinion of the Commissioner.

4th. The second reason of appeal is based on the assumption of a proprietary right in the appellants, as riparian owners of certain lots; and that the wharf on the Sugarhouse lot, is an improvement in front of those lots; and that such assumed proprietary right, and the alleged partial improvements, vested in the appellants an estate in the whole land in front of said lots, although covered with water, out to the Port Warden's line, irrespective of actual improvements. It has been already demonstrated, that the appellants have shown no title to the said lots, or to said wharf. They are, therefore, not aggrieved by the judgment. It did not effect their title. Their appeal is pragmatical. They have no right to intervene, *pro bono publico*. They can only be heard *pro interesse suo*. But the only evidence of the *situs* of said lots is in the testimony of William Dawson, Jr.; and he describes them, as bounded by the lines of Patapsco River on the south, Lancaster street on the north, Burke street on the west, and Cannon street on the east. Now Hudson street is south of Lancaster street, and Boston street is south of Hudson street, and both cross Burke and Cannon streets; and both are public streets of the city, oc-

cupying, no doubt, ground reclaimed from the water. Whether they became public streets by dedication and adoption, or by condemnation, or purchase, is not shown by any proof in the record. Who is the proprietor of those streets is not shown; but the city of Baltimore claims to own all the wharfs in the city, at the end or alongside of public streets; and large revenues accrue from rents received for leases. The interposition of two streets, between 'the southern boundary of those lots and the water, as at the present existing, would raise a violent presumption that the land reclaimed, has been severed from those lots, by some conveyances, or other effectual acts. But the appellants complain that their caveat was only sustained to the extent of the actual improvements on the Sugar-house lot. Of this, in the absence of any apparent title to any part of said lots, or of said improvements, they, surely, have no right to complain. They have been protected, without right to protection. It is not shown that they own a foot of land, bounding on the Patapsco.

5th. The third reason assigned is untrue in fact. The actual improvements were excluded from the certificate. But the appellants, pending the caveat, sought to gain advantage by commencing improvements, beyond the actual improvements. But what right had they to make the improvements in progress? The opinion of the Commissioner on this point is undoubtedly correct. There must be a riparian right to ensure title to the improver. The acts of the appellants were encroachments; and cannot be invoked as the foundation of a title, in the absence of presumption from lapse of time.

6th. Apart from the question of riparian rights, as protected by the Act of 1862, ch. 129, we should entertain no reasonable doubt of the affirmance, by this Court, of the judgment of the Commissioner. Should that Act be held to apply, the appeal, nevertheless, ought to be dismissed for want of title in the appellants; for the added Article No. 38, expressly excludes the appellant from claiming the

accretions, unless upon the establishment of his title, as the proprietor; and equally excludes any one from making improvements, unless he be proprietor.

BARTOL, J., delivered the opinion of this Court:

The application in this case was made to the Land office, for a special warrant to cover about twenty acres of vacant land suggested to lie in Baltimore city, on Harris' creek. A warrant was issued, and in its execution twenty-one acres, two roods, and twenty-four perches were located and embraced in a certificate of survey dated the 24th day of October 1857, by the name of "Oversight." This certificate was returned, and the composition money paid. A caveat was filed by the Canton Company as to part of the land embraced in the survey; and that caveat being sustained, the plats and certificates were returned and corrected. On the 30th of October 1860, the appellants filed their caveat, and under an order from the Commissioner, evidence was taken, and locations made by them. On the 2nd of August 1861, the Commissioner passed an order sustaining the caveat in part, and in part overruling the same, and deciding that a patent should issue to the appellee for two parcels, one containing two acres, one rood and six perches, the other one rood and seven perches. On the application of the caveators, this order was opened, and further proof was offered, and other locations were made on their behalf. Upon the re-hearing, the Commissioner, on the 11th of October 1861, adhered to his decision of the 2nd of August. Whereupon the caveators appealed, and filed their reasons therefor, as required by the 46th section of the 5th Article of the Code.

In the progress of the case in the Land office, a great many locations were made, and numerous plats returned, accompanied with voluminous testimony, requiring for their examination much labor on the part of the Commissioner, and that officer appears to have devoted to the consideration and decision of the subject very great care and ability.

In disposing of the present appeal, however, it will not be necessary for us to enter into any elaborate examination of the plats, or to discuss the many interesting questions presented in the argument of counsel. The whole contest before us, is upon the caveat to one parcel delineated on the plats and described in the surveyor's return of the 30th of September 1861, as containing two acres, one rood and six perches, and is, for the most part, covered by navigable water.

Since the decision of the case by the Commissioner, the Legislature, by the Act of 1862, ch. 129, has enacted "that no patent shall hereafter issue for land covered by navigable waters." This Act came before us for consideration in the recent case of *Day vs. Day*, reported in 22 *Md. Rep.*, 530, when it was determined, upon full argument, that under its provisions no patent could be issued for land covered by navigable waters, notwithstanding the warrant had been returned, and the composition money paid into the Treasury, before the passage of the Act. That case, it is conceded by the appellee, would be conclusive of the present; provided the appellants have such an interest in the subject of dispute as to entitle them to prosecute an appeal.

In the case of *Gittings vs. Moale*, reported in 21 *Md. Rep.*, 135, this Court intimated the opinion that in order to maintain an appeal from the decision of the Commissioner of the Land office, overruling a caveat, the caveator must prove title, or an interest in the land in dispute, without which the appeal would be dismissed. That opinion was not material to the decision of the case, inasmuch as the interest was there shown to exist. Nor is it actually necessary now to decide that point, as it appears from the record before us, that these appellants have rights as riparian owners, which would be injuriously affected by granting the patent; and, therefore, even if such interest were necessary to be shown, would be entitled to prosecute the appeal. Yet, as the question is an important one, and has

been fully argued and more carefully considered, and as we are all of opinion that what was said in *Gittings vs. Moale*, on this subject, was erroneous, and ought to be corrected, we deem it proper now to dispose of the question.

Ordinarily, every suitor is bound to show to the Court some interest in the matter in dispute, in order to maintain his suit; and in the same manner every appellant must appear to be aggrieved by the judgment complained of, in order to be heard on his appeal; and, ordinarily, no one can be properly said to be aggrieved by a judgment, unless it be rendered upon a matter in which he has some interest or right of property. But this rule is not applicable to cases arising in the Land office, on applications for patents. It seems to be settled, by the long established usage and practice of that office, that *"a caveat will not be dismissed merely because the caveator shows no interest."*

So the rule was stated by Chancellor HANSON, in his testimony concerning the rules and practice of the Land office. See *Landholder's Assistant*, 449. The Chancellor further says: "Where the caveator shows no interest, but shows a cause of caveat, the judge determines merely with attention to the interest of the State, or, perhaps, its officers." Mr. KILTY says: "As to the point of an interest to be shown by the caveator, on hearing, I shall leave it where the testimony of the late Chancellor has placed it, only observing that on a full review of the practice, it does not appear to me that there ever was a rule requiring that a caveat should be dismissed, because the caveator did not show an interest in the matter in dispute." *Landholder's Assistant*, 491. These authorities sufficiently show the rule and practice of the Land office; and we will add, that looking to the nature of the subject, it is reasonable that a patent ought to be refused, if any good cause be shown against it, though the interest of the party making the objection should not be proved. In most cases, the caveat proceeds upon the ground that some right or title of the caveator would be interfered with by the grant of the patent; but as the ques-

Patterson, *et al.*, *vs.* Gelston.

tion is always whether it is lawful, right and just to issue the patent, this may and sometimes does depend upon other and higher considerations than the rights of the caveator, and therefore a caveat will not be dismissed merely for want of interest in the caveator in the matter in dispute; nor would this Court refuse to entertain his appeal merely on that ground. See *Chrisholm vs. Perry*, and *Smith vs. Baker*, 4 *Md. Ch. Dec.*, 31.

We have said, that under the provisions of the Act of 1862, the patent in this case would be refused. The decision in *Day vs. Day* applies, and we see no reason to depart from our ruling in that case. But, as in our opinion this record furnishes other and sufficient grounds of objection to the granting of this patent, we shall not rest our decision upon the Act of 1862. The documentary evidence produced by the caveator before the Commissioner, may, we think, be properly considered as testimony in the cause on this appeal. No exception was taken below to the form of the proof, and such objection now made for the first time in this Court, ought not to prevail.

It appears, from the documentary and other proof, that the tract called "Parker's Haven," which had been granted by the State before the year 1686, according to its true location, included the land lying between what is now called Burke street, on the west, and Cannon street, on the east, and extending on the south to the Patapsco river. It further appears, that all the land now lying between those streets down to the present water-line south of Boston street, is fast land, connected with what was originally the north bank of the Patapsco, and extending the shore-line by natural accretion, and filling up by artificial means, into the harbor much further south than the original south line of "Parker's Haven."

These facts are shown by the testimony of William Dawson and Owen Boulden. This land, formed by accretion, would, of course, belong to the riparian proprietor, and could not be granted by the State as vacancy. Excluding

this from the parcel in controversy, there remains nothing for the patent to cover, but the part lying south of Hudson street,. extending to the Port Warden's line, and covered by the waters of the Patapsco. Upon the principles decided by the late Chancellor, in *Chapman vs. Hoskins*, 2 *Md. Ch. Dec.*, 485, to which we give our entire approbation, no patent ought to be granted for land so situated, even though the power of the State to grant such patent might be unquestionable, and the Act of 1862 had not been passed.

The reasoning of the Chancellor in *Chapman vs. Hoskins*, applies with more force to the case of lands lying in the harbor of Baltimore, where riparian owners have secured to them, under the Acts of 1745 and 1784, valuable rights and franchises of extending improvements into the harbor from their water lots, and which it would be inequitable for the State to deprive them of, by granting to others the lands covered by water, in front of their lots. For these reasons the Court is of opinion that the caveat to the parcel containing *two acres, one rood* and *six perches*, ought to be sustained, and the patent therefor refused, and will pass an order accordingly. As to the other parcel, containing *one rood* and *seven perches*, no controversy has been made, and a patent may be issued for the same. The Court will not award costs to the appellants, but will leave the parties to pay their own costs respectively.

*Order affirmed in part, and reversed in part,*
*and cause remanded.*

(Decided July 12th, 1865.)