# JOSHUA S. LINTHICUM

## vs.

## JOHN F. SHIPLEY ET AL.

*Pond as Navigable Water—Boundaries on Waters—Patent for Land.*

If a pond, though not capable of use for purposes of commerce and travel, is, because connected by a channel with a navigable river, to be regarded as itself navigable, there can, in view of the Act of 1862, be no grant of a patent for land covered by the water of the pond.          pp. 98, 99

A grant, by the owner of the bed of a non-navigable stream, of land bounding thereon, conveys, even without express language, ownership to the middle of the stream.          p. 99

The caveator to the grant of a patent need not prove that he has any interest in the alleged vacant land, it being sufficient if he shows that the State has no title.          p. 100

The State cannot grant a patent to land of which the applicant for the patent is already owned.          p. 100

There is a *prima facie* presumption that riparian proprietors on non-navigable streams own the soil *ad filum medium aquæ*.          p. 100

A boundary upon a natural pond or lake in this State carries title to its centre.          p. 101

*Decided January 11th, 1922.*

Appeal from the Commissioner of the Land Office.

Caveat by John F. Shipley and George J. Cook to a certificate of survey filed in connection with an application for a patent by Joshua S. Linthicum. From an order sustaining the caveat, said Linthicum appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Samuel K. Dennis,* with whom was *W. Harry Holmes* on the brief, for the appellant.

*A. Theodore Brady* for the appellees.

ADKINS, J., delivered the opinion of the Court.

This appeal is from an order of the Commissioner of the Land Office, sustaining the caveat of the appellees, and refusing to grant a patent to appellant to part of the bed of a body of water, designated in the surveyor's certificate as a "pond," in the Third Election District of Anne Arundel County, containing, in the part alleged to be vacant land, thirty acres.

This pond, or lake, or whatever may be its proper designation, is entirely surrounded by lands owned by the caveators and the caveatees, and by one Hancock.

The grounds of the caveat are:

1. That the survey comprehends within its metes and bounds a tract of land or part thereof, covered or overspread with navigable or tide water.

2. That the said survey comprehends within its metes and bounds a tract of land or part of a tract of land, covered with water; that the caveators, who are owners of the land abutting on said water, enjoy riparian rights to the said water and land thereunder.

3. That the survey comprehends within its metes and bounds a tract of land, or part thereof, to which the caveators hold deed of title; and the land is owned by the caveators in fee simple.

The fundamental questions to be answered are:

a. Has the State title to the *locus in quo?*

b. Is the land covered by navigable water?

If the water is navigable then, under the Act of 1862, Code, art. 54, sec. 49, a patent may not be issued. If the State has no title the result is the same. First as to navigability:

It is abundantly established by the testimony of all the witnesses that the water covering the land cannot be used for purposes of commerce or travel; and that is the well established test in most of the states of this country. It does not seem to have been adopted in this State unless the recognition of the general rule in the case of *Havre de Grace* v. *Harlow,* 129 Md. 265, had the effect of overruling earlier decisions of this Court.

It was decided in the case of *Sollers* v. *Sollers,* 77 Md. 148, that a parcel of land containing about one and a half or two acres of land, called Terrapin Cove, "all of it covered by water, within the ebb and flow of the tide" with a maximum depth of eight feet, with a wire fence extending across its mouth thirty yards wide, said cove being described as "an arm of Mearses' Cove, which emptied into the Patuxent River through a channel made by John J. Sollers," was within the inhibition of article 54, section 49, of the Code. It being uncertain from the evidence in that case whether the "channel" thus referred to was an entirely artificial way, or whether, before it was made, the waters of Mearses' Cove had flowed through a natural outlet to the river, the Court assumed, for the purposes of its ruling, that it was a natural outlet. JUDGE PAGE, who wrote the opinion, quotes from earlier decisions of the Court as follows: "All the soil below high water mark within the limits of the State, *where the tide ebbs and flows,* that is the subject of exclusive propriety and ownership, belongs to the State, subject only to such lawful grants of such soil, as may have been heretofore made"; citing *Hess* v. *Muir,* 65 Md. 607; *Browne* v. *Kennedy,* 5 H. & J. 203. Continuing, the Court says: "Terrapin Cove, therefore being a tributary of the Patuxent River, and within the ebb and flow of the tide, must be regarded as a public river or arm of the sea, the soil of which under the charter

granted to Lord Baltimore, became vested in the State of Maryland; and so it remains, unless it be included in some grant by the State, made prior to the passage of the Act of 1862." That case seems to hold that a body of water navigable under the common law test comes within the provision of the Act of 1862.

If this be the proper interpretation of that decision, the order appealed from must be affirmed, because then the Commissioner was prohibited by the Act of 1862 from granting a patent for the *locus in quo*, as it appears from the testimony of all the witnesses that there is a channel connecting the so-called pond with the Patapsco River, said channel being variously estimated at from eight to twenty feet in width, through which the tide ebbs and flows.

However, it does not appear from the report of the Sollers case whether or not "Terrapin Cove" was in fact navigable, that is, susceptible of being used for purposes of commerce or travel; and no reference to that is made in the opinion of the Court.

But if that case be not regarded as decisive of this, then the order of the Commissioner must be sustained, because the State had no title.

It is conceded by caveatee that a grant, by the owner of the bed of a non-navigable stream, of land *bounding thereon*, conveys, even without express language, ownership to the middle of the stream, *Day* v. *Day*, 22 Md. 530; *Browne* v. *Kennedy*, 5 H. & J. 196. But it is urged that before caveators can successfully invoke that principle, they must first establish by proof a grant calling for the shores of the pond to them or their predecessors in title *from the State;* and it is contended that the caveators have failed to meet that burden in that they only claim that they are "owners of land abutting" on the pond, and the evidence is only this as to Shipley; while as to Cook definite lines are established beyond the shore, but short of the middle of the water. The proof also shows that the lines of Hancock, another riparian proprietor, who is not a party to the proceeding, extend into

the water, but not as far as the middle. This contention overlooks the testimony of Linthicum, the caveatee, that his "deed calls for so many feet binding and on the Patapsco River to the gut of aforesaid pond, then running to and *binding on* the tidewaters of said gut and pond nine following courses and distances, which takes in a greater portion of the boundary line of the pond." His oral testimony as well as that of other owners as to ownership was admitted without objection. Now a caveator need not prove that he has any interest in the alleged vacant land. It is enough if he shows that the State has no title. "A caveat will not be dismissed merely because the caveator shows no interest." *Patterson* v. *Gelston,* 23 Md. 432. The Commissioner correctly observed that he must deal with this case exactly as if a stranger were the applicant for the patent. The State cannot grant Linthicum a patent, under a special warrant such as was applied for in this case, to land of which he is already the owner.

Besides, *the prima facie* presumption is that riparian proprietors on non-navigable streams own the soil covered by such rivers *ad filum medium aquae.* This presumption was probably negatived as to Cook and Hancock by the evidence that their lines run to definite points in the water short of the center; but it holds good as to Shipley. *Angell on Water Courses* (7th Ed.), sections 10, 95. The implication of the language of the following Maryland cases is to the same effect: *Browne* v. *Kennedy, supra; Day* v. *Day, supra; Gump* v. *Sibley,* 79 Md., at p. 168; *Goodsell* v. *Lawson,* 42 Md., at p. 362; *Shipley* v. *Western Md. R. R. Co.,* 99 Md., at p. 133. See also 27 R. C. L., p. 1371, sec. 280.

It is further urged by caveatee that there is a distinction, as to the rights of riparian owners, between a non-navigable stream and a natural pond, and that a boundary upon a natural pond or lake carries title, not to its center, but only to low water mark; and he cites five cases from Maine, Massachusetts, New York and Ohio, to support this view. The Massachusetts ordinance of 1647 made every lake of more

than ten acres extent public. The decisions of that State therefore necessarily denied that riparian ownership extended to the center of such lakes. The same may be said of Maine decisions, that State being governed by said ordinance of 1647, which was operative in Maine, as that State was originally a part of Massachusetts. The New York case cited, *Wheeler* v. *Spinola,* 54 N. Y. 377, was virtually over-ruled by the later case of *Gouverneur* v. *National Ice Co. of New York,* 134 N. Y. 355, 18 *L. R. A.* 695. The Ohio case cited, *Lembeck* v. *Nye,* 47 Ohio St. 336, does not support caveator's proposition. While it cannot be denied that the subject of the ownership of the beds of small lakes has been somewhat confused by conflicting decisions, we are not impressed with the reasonableness of the distinction contended for, and the weight of authority is against it. *Farnham, Waters and Water Rights,* sec. 861; 40 *Cyc.,* p. 636, sec. 3; 27 *R. C. L.,* p. 1373, sec. 281. A very enlightening discussion of this subject, with citations of cases, is found in the note to *Gouverneur* v. *National Ice Co. of New York,* 18 L. R. A. 695.

For reasons above set out the order appealed from will be affirmed.

*Order affirmed, with costs to appellee.*