## McHenry Lumber Co., Inc., Appellant, *v.* Second National Bank of Wilkes-Barre, Executor.

*Decedents' estates—Claims—Orphans' court jurisdiction—Executors and administrators.*

1. Every adverse claim against a decedent's estate which is cognizable at common law, can also be proved and allowed in the orphans' court on the settlement of the executor's or administrator's account.

*Affidavit of defense—Practice, C. P.—Contract—Omissions—Intention—Construction of contract.*

2. Where it has not been averred that anything has been omitted from an agreement by fraud, accident or mistake, or that the meaning of the words used in it can only be ascertained by a reference to extraneous facts, the courts will not consider averments, in a statement of claim or other pleading, as to the alleged purpose, spirit and intent of the agreement.

3. An agreement will not be so construed as to nullify any part of it, unless no other conclusion is reasonably possible.

*Corporations—Foreign corporations — Internal management — Jurisdiction—Assumpsit.*

4. Ordinarily the courts of this State will not sustain an action of assumpsit where the balance claimed to be due can be ascertained only by an examination into the internal management of a foreign corporation. Mulligan's Est., 274 Pa. 398, considered and followed.

Argued May 19, 1924. Appeal, No. 210, Jan. T., 1924, by plaintiff, from judgment of C. P. Luzerne Co.; Dec. T., 1922, No. 526, sustaining questions of law raised by affidavit of defense, in case of O. D. McHenry Lumber Co.,

Inc., v. Second National Bank of Wilkes-Barre, Executor of Estate of E. W. Mulligan.  Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.  Affirmed.

Assumpsit against executor.  Before FULLER, P. J.
Questions of law raised by affidavit of defense.
The opinion of the Supreme Court states the facts.
Judgment for defendant.  Plaintiff appealed.

*Error assigned* was, inter alia, judgment, quoting it.

*Edward J. Fox,* with him *H. Montgomery Smith,* for appellant, cited: Loan Soc. of Phila. v. Eavenson, 241 Pa. 65; Homewood People's Bank v. Hastings, 263 Pa. 260.

*F. W. Wheaton,* with him *P. F. O'Neill* and *James L. Morris,* for appellee, cited: Fulton's Est., 200 Pa. 545; Com. ex rel. v. Dalzell, 152 Pa. 217.

OPINION BY MR. JUSTICE SIMPSON, July 8, 1924:

Plaintiff appeals from a judgment in favor of defendant, as executor of the estate of E. W. Mulligan, deceased. The suit was in assumpsit, and the judgment was entered because the statement of claim showed that no recovery could be had in that form of action.  The claim was first presented to the orphans' court, on the audit of the executor's account; it was dismissed for want of jurisdiction, because it involved an inquiry into the internal management of a foreign corporation, and the decree was affirmed for that reason: Mulligan's Est., 274 Pa. 398. Plaintiff thereupon began the present suit in the court of common pleas, but since every adverse claim against a decedent's estate, which is cognizable at common law, can also be proved and allowed in the orphans' court, it follows that this appeal is, in effect, a request that we reconsider our prior decision.

The present suit is based upon three writings, each dated December 22, 1911. Nothing is alleged to have been omitted from or added to any of them by fraud, accident or mistake; nor is there any averment that their meaning can only be ascertained by reference to extraneous facts; hence the repeated allegations in the statement of claim, as to their "whole purpose, spirit and intent," are of no value in determining whether or not defendant is liable.

The first agreement was between E. W. Mulligan, whose executor is defendant here, and the O. D. McHenry Lumber Co., Inc., a corporation of the State of Virginia (hereinafter called the Virginia corporation), three-fourths of whose common stock, and all of whose preferred stock, was owned by the plaintiff in this case. By the agreement, the Virginia corporation leased to Mulligan, his heirs and assigns, a tract of timber land, and the mills, tramways and other equipment thereon, with the right to cut and remove all the lumber, upon paying a specified stumpage, and with an option to purchase the property within five years. It was further specified that Mulligan might assign all his right, title and interest in the agreement, to the Virginia Lumber & Extract Co., a corporation of the State of Delaware (hereinafter called the Delaware corporation), in which event he would be relieved from all personal liabilty on the covenants and conditions of the lease, as he would also be, if he, or his assigns, surrendered the lease on six months' notice, as they were therein given the right to do at any time.

The second agreement was between plaintiff and one John G. McHenry. It recited the first agreement, and the intention to assign the lease to the Delaware corporation, which had not yet been done because its charter had not been obtained and the company organized. By this instrument, McHenry agreed to pay to plaintiff nine-sixteenths of such of the net earnings of the Delaware corporation as might arise from the operation on

the leased land, until the sums so paid should aggregate $100,000; to secure this, he agreed to have placed in the hands of a trustee, to be selected by himself and two other named persons, common stock of that corporation of the par value of $225,000 (being nine-sixteenths of the total issue), to be held by the trustee "until dividends shall or may be declared on the stock held by the trustee aforesaid to the amount of $100,000, when said stock is to be returned" to the Delaware corporation. It further provided that preferred stock, bearing seven per cent interest, might be issued "to the amount of cash actually paid in," and that reasonable salaries might be allowed for services rendered. It did not stipulate how the net earnings, accruing from the leased property only, should be determined; nor under what circumstances dividends on the stock should be declared.

By the third agreement, Mulligan and another person, for themselves, their heirs and assigns, "undertake and agree to carry out all the covenants, contracts and conditions agreed to be performed and carried out by John G. McHenry in the above article of agreement." This is a joint liability, but appellee expressly refused to make a defense on that ground.

The statement of claim and accompanying papers show that the Delaware corporation was formed; that Mulligan first caused all its capital stock to be issued to himself, placed the whole of it in a voting trust, and then had $225,000 par value of it issued to himself as trustee, that the Delaware corporation made $16,212.84, net earnings, the first year it operated under the lease, but at the end of the second year closed down the plant and sold the property; that, *after the plant had been sold out,* a trustee, selected by the other two persons named in the second agreement, made a written demand on Mulligan to deliver the $225,000 par value of stock of the Delaware corporation, which Mulligan refused to do, whereby he "became immediately liable to the plaintiff in damages," because it "was deprived of its right to control

the operations" of the Delaware corporation, "the continued operation of said lumber business......was defeated, the valuable property rights of plaintiff therein were lost and destroyed,......to the loss and damage of the plaintiff in the sum of $100,000."

The statement does not aver when the trustee was selected; why only two of the parties named acted in choosing him; that the business was mismanaged, or any of its assets improperly distributed; that, if differently managed, profits could have been made; whether the amount of net earnings, said to have been made the first year, were calculated before or after dividends had been paid on the preferred stock; what became of those earnings (though it was uncontradictedly stated at bar that they were lost the second year); that dividends were ever declared; that it was not a wise exercise of business judgment to close down and sell out at the end of the second year; that six months' notice of an intention to surrender the lease had not been given prior to that time; nor that there were then or thereafter any assets which were not needed to pay debts.

Plaintiff bases its claim solely upon the allegation that Mulligan was in duty bound to continue the business until there were sufficient net earnings to declare dividends, aggregating $100,000, on the $225,000 par value of the stock of the Delaware corporation, and until they were in fact declared and paid to plaintiff. The agreements do not so state, however, but only that, while the business is carried on under the lease, nine-sixteenths of the net earnings from that source of revenue (after deducting the dividends on the preferred stock), should be paid to plaintiff until it thereby received $100,000. If appellant's contentions were correct, the clause allowing a surrender of the lease would be a nullity, so far as respects McHenry and plaintiff, despite the fact that the net earnings, out of which alone plaintiff was to be paid, were to be obtained only by operating under the lease. Of course we cannot uphold such a contention; on the

contrary we decide that since there were no averments that net earnings were or should have been made, or that any dividends were or should have been declared, no sustainable claim was presented. These essential allegations were probably omitted because it was feared that, if they were inserted, the objection successfully made to the claim, when presented on the audit of the executor's account, would be interposed again, with like success; or that, when it was attempted to restate the accounts of the defunct Delaware corporation, in order to determine the amount of liability, if any, it would soon appear that this action of assumpsit was not appropriate for the purpose.

The judgment of the court below is affirmed.