JAMES P. GRAY ET AL *v.* DAVID H. GRAY

[Nos. 15, 16, October Term, 1940.]

*Decided November 13th, 1940.*

The causes were argued before BOND, C. J., PARKE, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*V. Calvert Trice,* with whom was *Emerson C. Harrington, Jr.,* on the brief, for the appellants.

*Thomas W. Simmons,* for the appellee.

MITCHELL, J., delivered the opinion of the Court.

On the 28th day of November, 1938, upon the application of James P. Gray and others, heirs at law of Cornelius Gray, late of Dorchester County, a "special

warrant of re-survey of holding and possession" was issued by the Commissioner of the Land Office, directed to the county surveyor of that county. In substance, the special warrant recited that the applicants for the same, or those under whom they claimed for the last twenty years, had set forth in their application that they were entitled to the fee in a certain tract or parcel of land located in the eighteenth election district of Dorchester County, adjacent to the lands of certain named owners thereof, "which they desired to reduce into one entire tract, without adding any contiguous vacancy," and, accordingly, the surveyor to whom it was addressed was directed to re-survey on behalf of the applicants the land aforesaid, according to their holdings and possessions, and the holdings and possessions of those under whom they claimed.

In pursuance of the authority of said warrant, a survey of the property mentioned therein was duly made by the surveyor, who, as appears from the record, on May 22nd, 1939, filed in the office of the Land Commissioner a certificate of survey and plat, showing the location of a tract of 321 acres of land, designated as "East Marsh Re-Survey."

The record shows that on October 3rd, 1939, David H. Gray, the appellee, by letter addressed to the Commissioner and received by the latter on October 5th, 1939, filed a caveat in the proceedings, in which it was set forth that the caveator understood from the surveyor that said survey included practically all of a tract of land called "Gray's Discovery," and that it was the further understanding of the caveator that it also embraced land alleged to be vacant. On November 8th, 1939, the appellants answered the caveat, setting forth that no part of the land called "Gray's Discovery" was included in the survey under the warrant, and further that the same did not embrace land other than that which under the laws of the state the respondents were entitled to include therein. Following the answer, an amended caveat was filed by the appellee, in which objection was made to the

granting of a patent for the land described in the afore-going survey, and in which, in substance, the specific grounds upon which the original caveat was filed were set forth as follows:

(1) Because said "East Marsh Re-Survey" included therein tracts or parts of tracts of land, among which was a tract called "Gray's Discovery" which was owned by the caveator; and further that it included other tracts of land known as "Gray's Luck," "Gray's Possession" and "Moore's Desire," respectively, or portions thereof; all of which said lands, together with other parcels of land included in said re-survey, prior to the application for the land for which the patent was sought, had been previously patented by the State; (2) because the application and return of the surveyor embraced vacant land for which the caveatees sought to obtain a patent; (3) because said application and return embraced navigable waters, and (4) because they embraced land which was not owned in fee simple by the caveatees, and to which they were not entitled under the provisions of section 29 of article 54 of the Code of Public General Laws of this State.

It does not appear from the record that the amended caveat was formally answered by the caveatees, but it nevertheless does appear that the respective parties, represented by counsel, treated the questions involved in this case as being those raised by the amended caveat, and in consequence the voluminous testimony before us is directed to that end.

Briefly, the testimony submitted by the caveatees tends to establish the fact that in 1917 Cornelius Gray, their father, died intestate, leaving surviving him his widow and seven children, who were his sole heirs at law; that at the time of his death the said Cornelius Gray owned a one-half undivided interest in approximately 1220 acres of marsh land located in Dorchester County, the remaining half interest being then owned by J. Fred Dunn; that upon the death of the said Dunn the entire marsh land was sold under appropriate chancery proceedings to the

widow and children aforesaid, and that the said widow subsequently died intestate, leaving as her sole heirs at law the aforesaid seven children, who are the caveatees in the instant case. The testimony further tends to show that the above land is covered by marsh; that for many years it has been used for the purpose of trapping muskrats, and that, during the period of the successive ownerships above indicated, for convenience in trapping the same, it was divided into three sections designated, respectively, as "North Marsh," embracing certain tracts of land, the patent names of which were "McAllister's Desire," "Gray's Possession," Gray's Preference," or by whatever other names the said constituent tracts might be known, containing approximately 320 acres; "East Marsh," containing approximately 300 acres, embracing patented tracts known as "Moore's Desire," "Gray's Luck" and "Gray's Possession," or by whatever other names the same might be known, and "South Marsh," containing approximately 600 acres, embracing patented tracts known by various names, among them being a part of the above mentioned land known as "Gray's Possessions." All of the above subdivisions appear to be contiguous, and it further appears that the entire tract is surrounded by other marsh lands belonging to various owners who use the same for like purposes, namely, that of trapping muskrats. Among these adjacent owners is David Gray, the appellee, who together with his son, Rodney L. Gray, claim title to a tract of land containing 17¼ acres commonly called and known as "Gray's Discovery," which testimony tends to show was originally patented to Thomas Gray, by virtue of a patent issued May 24, 1792, and which, through transition of title, having become vested in Louisanna D. Covington, was conveyed by the said Louisanna D. Covington and Milton Covington, her husband, to the said David H. and Rodney L. Gray, by deed dated the 4th day of February, 1922, duly recorded among the Land Records of Dorchester County.

The subdivision of land belonging to the caveatees, appearing to be adjacent to the land of the caveator, is

embraced in that part of the entire holdings of the caveatees designated as "East Marsh." Specifically, the subject of controversy in the case before us, as between the parties to the same, involves the division line between the originally patented tract known as "Gray's Discovery," the ownership and possession of which is claimed by the caveator, and the originally patented tract known as "Gray's Luck," the ownership and possession of which is claimed by the caveatees.

And in this connection it is conceded that, in relocating the lines dividing the respective tracts known as "Gray's Luck" and "Gray's Discovery," as called for in the respective patents of the above tracts, the certificate of survey and plat returned to the Land Commissioner establishes the fact that said lines do not coincide. Furthermore, the above papers definitely show that, as established by the pretensions of the caveatees, based upon their alleged adverse holdings, the dividing line between the above named tracts excludes from "Gray's Discovery" approximately 12½ acres, and embraces the same in the re-survey of "East Marsh."

The case now under consideration involves two appeals, the first being from an order of the Land Commissioner passed on the 23rd day of February, 1940, sustaining the caveat, with costs to the caveator; and the second being from an order of said Commissioner, passed on the 20th day of March, 1940, overruling a motion of the caveatees for leave to amend the certificate of survey of "East Marsh Re-Survey," so as to exclude therefrom "any part of 'Gray's Discovery' included within the survey of 'East Marsh Re-Survey' " as returned in the surveyor's certificate filed with the Commissioner. These appeals will now be considered.

Section 29 of article 54 of the Code of Public General Laws provides as follows: "Any person entitled to lands in fee simple and being in possession thereof and not desiring to add contiguous vacancy may obtain a warrant of re-survey from the land office, and it shall not be necessary in such warrant to state the name of the tract

or tracts of land to be re-surveyed; and the surveyor of the county to whom such warrant shall be directed shall survey the lands to be affected thereby according to the possession and holding of the person obtaining such warrant, or those under whom he claims for the last twenty years, and shall take proof of such possession and holding."

It is the contention of the caveatees that, under the provisions of the above section, whether their title is supported by private grants, by proof of adverse possession, or whether their application for a patent embraces land covered by former patents from the State, upon proof that they are entitled to lands applied for, in fee simple, they are entitled to a warrant of re-survey and the issuance of a patent, provided no contiguous vacancy is applied for or is embraced in the same, and provided also that all other requirements of law relating to the granting of patents in this state have been complied with.

For the reasons set forth in the amended caveat, that contention is denied by the caveator, and accordingly the testimony adduced by the contending parties is directed, respectively, along these diverging lines.

Nothwithstanding the existence of wide conflict between the parties upon questions tending to establish their respective exclusive holdings, it seems quite clear from the testimony as a whole that the lands of both the caveator and the caveatees, in connection with lands held by other owners who are not involved in this suit, form a vast area covered by marsh, which for many years has been used by trappers and hunters. The testimony is conclusive that a greater part of the area is boggy and is traversed by guts characteristic of lands of the above type. It is also shown that it is traversed by a stream which gradually increases in magnitude as it flows toward a common outlet, and eventually enters the Nanticoke River. Much of the testimony is directed to the end that the above stream is navigable within the area for which the instant patent is applied, and there is evidence tending to show that the tide ebbs and flows in the

section of the stream which passes through the controversial area, as well as in sections of the stream both above and below that area. The width of the stream at some points is not over eighteen or twenty feet; its depth ranges from two and one half to three feet, and it is established that, at one point along its course, a dam has been maintained so as to confine fresh water from upper territories within a trapping area, and that at another point a county road bridge is erected across the stream, without provision for under-passage by boats. On the other hand, it is shown that from time to time the stream has been traversed along its lower section in small motor boats, and that, along its entire course, trappers and others have traversed it in boats of such weights as to enable the navigator to lift the craft above or around the dam. It also appears that the bridge crosses the northern section of the stream, and the dam crosses the southern section thereof, at points, respectively, above, and nearly below, the outlines of the land embraced in the re-survey upon the application for the instant patent is predicated. Moreover, the plat filed with the return to the Commissioner indicates that sections of the stream embraced within the area of the patent now applied for, as well as sections located further toward the source of the stream and beyond the outlines of the patent applied for, assume the form of lakes or ponds varying in width from 50 to 100 feet.

The surveyor to whom the warrant in the instant case was directed, and who testified as to his findings relating to both the width and depth of the stream at its various points, was asked the following questions and gave the following answers: "Q. Can you state whether or not this stream would be navigable, if that dam would be removed from the bridge that crosses the county road, to which you have referred, down to the Nanticoke River? A. I don't understand what you mean by 'navigable.' Q. I mean by that could it be traversed in a row-boat, canoe or motor boat of sufficient size to carry one or several men in the boat? A. It could be in a row-boat. Could

be in a motor boat part of the way, I think on certain tides. Whether passage could be made all the way to the county road bridge in a motor boat I couldn't say. I think the tide would go to that point. * * * Q. Could said creek be so traversed and navigated by such boats as I have named up to the point and beyond where the dam is located to which you have referred? A. Oh yes, it could be navigated beyond the dam, provided the boat wasn't too large."

From the above testimony, corroborated as it is by other testimony appearing in the record, it is urged by the caveator that the stream is navigable, and that because of the provisions of the Act of 1862, chapter 129, Code Pub. Gen. Laws, art. 54, sec. 48, which specifically provides that no patent for land covered by navigable waters in this state can be issued, the instant application should be denied.

The solution of the question raised is not without its difficulties. At common law, such waters as are navigable in the popular sense of the word, regardless of whether the tide ebbs and flows in them, are public highways. And in 27 R. C. L. p. 1303, it said: "The rule by which to determine whether waters are navigable is variously stated, but clearly enough defined. The test of navigability of a river, as stated by the Supreme Court of the United States is that these rivers are navigable in law when they are used, or are susceptible of being used, in their ordinary condition, as highways of commerce over which trade and travel are or may be conducted in the customary modes of trade and travel on water."

In *Sollers v. Sollers*, 77 Md. 148, 26 A. 188, it was decided by this court that a parcel of land containing about one and a half or two acres, covered by water within the ebb and flow of the tide, with a maximum depth of eight feet and with a wire fence extending across its mouth thirty yards in width, described as being an arm of "Mearses' Cove" which emptied into the Patuxent River through a channel made by John J. Sollers, was within the inhibition of section 48 of article 54; it being

uncertain in that case whether the "channel" thus referred to was an entirely artificial way, or whether, before it was made, the waters of "Mearses' Cove" had flowed through a natural outlet to the river.

The opinion of that case quoted with approval the earlier decisions of this court, citing *Browne v. Kennedy,* 5 H. & J. 195, 203, and *Hess v. Muir,* 65 Md. 586, 607, 5 A. 540, 6 A. 673, and held that the area there involved was a tributary of the Patuxent River, and being within the ebb and flow of the tide, must be regarded as a public river or arm of the sea, the soil of which, under the charter granted to Lord Baltimore, became vested in the State of Maryland; where it remained unless included in some grant by the State made prior to the act of 1862. The plaintiff in the above cited case did not rely upon a grant; his claim was based upon adverse possession. And this court said [77 Md. 148, 126 A. 189]: "But title by possession presumes a grant, and a presumption cannot be entertained as against one incapable of granting. *Casey v. Inloes,* 1 Gill, 497. No title, therefore, could be acquired by possession as against the State, in the face of the statute, which expressly provides, that no such grant shall be made. * * *" To the same effect is the case of *Linthicum v. Shipley,* 140 Md. 96, 116 A. 871, 872. In the latter case, affirming the action of the Land Commissioner sustaining a caveat to an application for a patent to a part of a body of water connected with tidewater, designated in the surveyor's return as a "pond," this court, quoting the *Sollers* case with approval, said: "If this be the proper interpretation of that decision, the order appealed from must be affirmed, because then the Commissioner was prohibited by the Act of 1862 from granting a patent for the *locus in quo,* as it appears from the testimony of all the witnesses that there is a channel connecting the so-called pond with the Patapsco river, said channel being variously estimated at from eight to twenty feet in width, through which the tide ebbs and flows."

However, a distinction between the *Sollers* and *Linthicum* cases and the one now before us lies in the fact that, in both of the former cases, the area for which patents were applied for was entirely submerged, and that over it the tide ebbed and flowed; while, in the latter, a large area of land, through a part of which a tide water stream flows, is embraced in the certificate of survey returned to the Land Commissioner.

The record reveals that the predecessors in title, under whom the caveatees claim, originally secured patents for several tracts of land as follows: "Moore's Desire," April 7th, 1892; "Gray's Luck," December 24th, 1898, and "Gray's Possessions,'" October 18th, 1904. And it is therefore apparent that the above patents were issued after the passage of the Act of 1862. Assuming that these patents were valid as to the lands embraced therein, respectively, it would not follow that the bed of the stream could be claimed by the caveatees, because to so hold would be in direct conflict with that act.

In other words, in the instant case, all that can be construed to have passed to the caveatees under the patents mentioned, as to the lands included within the outlines of the surveyor's return, are those which the Land Commissioner was legally empowered to issue patents for as of the respective dates on which they were issued. In our opinion, therefore, the last mentioned patents did not include the area covered by the navigable waters to which we have referred, nor can these waters be construed to be included in any patent hereafter issued.

The case of *Tyler v. Cedar Island Club*, 143 Md. 214, 122 A. 38, supports the above conclusion. In that case suit was brought for damages incident to a trespass committed by the defendant upon lands held by the plaintiff under a patent issued by the State of Maryland in 1891, and covering a tract of land containing 2,880 acres. The area embraced in the patent was surrounded by water and was intersected by a number of creeks or inlets; the patent was obtained by the original patentee under

article 54, section 21 (now [Code 1939] section 29), and the land was somewhat of the same character as that embraced in the case now before us. One of the objections raised to the plaintiff's title was that the patent under which the plaintiff claimed embraced large areas of valuable land or bottom covered by navigable waters contrary to the laws of the State and contrary to the common law rights of its citizens. It was there held that the facts that the outlines of the tract described in the patent included navigable waters contrary to the provisions of the Code (now section 48 of article 54) would not render the patent wholly void.

Turning now to the remaining objections raised by the instant caveat, it should be borne in mind that, by the motion to amend the certificate of survey, the overruling of which motion is the basis of the second appeal in the instant case, the caveatees sought to eliminate from the area included in the certificate that part of the tract of land known as "Gray's Discovery." This tract, as has been stated, is embraced in a patent under which the caveator claims title; and the granting of such motion and the consequent amendment of the certificate of survey would have disposed of one of the objections raised by the caveat, namely, that said certificate included a part of the land belonging to the caveator. We are of the opinion that the motion should have been granted, notwithstanding that it was made shortly after the hearing on the application for the patent and after the caveat had been sustained.

The area sought to be excluded by the amendment, as we have observed, was shown by the survey to be a part of the area included in a patent issued as far back as 1792, and regardless of the alleged adverse possession thereof, which the caveatees in their proof attempted to establish, was not the subject of adverse possession. Code, art. 57, sec. 10.

It is argued by the caveatees that the above section, which specifically provides that adverse possession for a period of twenty years shall bar all right or claim derived

from the State under any patent issued upon a warrant of re-survey, but exempts from its provisions all warrants "laid" prior to the 26th day of January, 1819, should not be construed in connection with section 29 of article 54, *supra*. With that contention, for reasons stated, we do not agree. The older patent prevails over the junior. *Hoye v. Swan's Lessee*, 5 Md. 237.

Finally, it is submitted that the land embraced in the surveyor's certificate other than the area claimed by the caveator (which by the proposed amendment the caveatees now seek to exclude from the effect of the patent applied for), is not now subject to patent because (a) it includes tracts of land for which former patents have been granted by the State, and (b) that it embraces vacant land. Obviously the Commissioner is without authority to issue a patent for the same land embraced in a previous patent granted by the State, unless meanwhile the land described in the former patent has escheated, and unless it is shown that the applicant is claiming under the former patent. The instant case is illustrative of this deduction, and we have said that the caveatees are not entitled to a patent which includes the conflicting interest in land ·held by the caveator under a patent from the State.

But we do not construe section 29 of article 54 to mean that former patentees are precluded from applying for a patent for lands to which they are entitled in fee simple, whether the same has or has not been formerly patented, and whether it has been acquired by a grant or by adverse possession. The legal effect of a patent is to transfer to the person in whose name it issues only the right the State possesses. It does not avail against any prior existing legal title. *Armstrong v. Bittinger*, 47 Md. 103; *Hoye v. Swan, supra.*

The weight of the testimony in the instant case tends to show that for many years the caveatees or their predecessors in title have possessed and exercised exclusive ownership over all the land embraced in the certificate of survey, including that part of the tract known

as "Gray's Discovery." For reasons stated, we have said that the caveatees could not acquire title by adverse possession against any part of "Gray's Discovery"; but it does not follow that they have not acquired title by adverse possession to the remaining land embraced in the certificate of survey, and which was not included in the patents under which they claim.

It is our conclusion that the language used in the quoted section is applicable to the facts in the instant case.

Accordingly the order from which the appeal from the action of the Commissioner in sustaining the caveat was taken will be affirmed; and the order from which the action of the Commissioner, in overruling the motion to amend the certificate of survey as indicated, was taken, will be reversed, and the case remanded to the end that orders may be passed in accordance with the views expressed.

> *Order in Appeal in No. 15 affirmed, with costs to the caveator.*

> *Order in Appeal No. 16 reversed, and case remanded with costs to the caveatees.*