JOHNSON, Judge.
This is an appeal from a final decree in-, favor of the appellees-plaintiffs.
The sole question is whether defendants-appellants have the right to dike around their pasture and maintain a dry well to-keep the pasture drained in times of heavy rainfall and flash floods.
The Hill’s farm is located on the east-side of Alligator Lake in Columbia County. The 1963 U. S. Geological Survey-maps show a large marsh or swamp area, adjoining the lake on this eastern shore. The western shore has a higher bank, no-swamp, and is presently used for lake shore residences. The plai-ntiffs-appellees-are lake shore residents who are seeking to* keep the lake at a height desirable for boating, fishing and hunting, and the appellants represent the farm interest whiclu *791 likewise desire stabilizing the water level in order to use their lake shore property .for farming and grazing cattle.
The plaintiffs-appellees complain that Hill’s dike could cause flooding of their properties; that his 16 inch dry well dug in 1963 in his pasture is draining the lake; ■and that his dike, fenced on top, prevents them from boating or fishing over that portion of the lake which he utilizes as a pasture.
Alligator. Lake is non-navigable, consists •of 800 to 1,000 acres, has a relatively flat bottom, and is partially located over a geological fault which accounts for sink holes. ■On occasions these sink holes completely •drain the lake, but when tire lake is at normal height, a heavy rain will cause the lake to overflow into the swamp area due to the fact that the ^bottom is relatively flat and the lake serves as a repository for rainwater for the large 61,000 acre basin. All parties agree that the lake was subject to extreme fluctuation.
The Hills purchased their land in 1950 .and have continuously since that time used the land in dispute, the 300 acres presently •enclosed by a dike, for a pasture. Deputy Sheriff Thomas lived on that property from 1938 to 1948 during which time the land in dispute was likewise used year round for cows and hogs. Immediately after purchasing the property in 1950 Hill began clearing and improving same, and in 1954 he began construction of the dike, drainage ditches and wells, the purpose of which was to aid him in draining pot holes and rainfall from his pasture and to keep flash floods from covering his pasture. By 1961 Hill ■had completed miles of dike, containing a 150 foot spillway, at a cost of approxi-mately $50,000. He testified that this dike was built on his property along the edge of ■a natural clay rim of ground somewhat higher than the lake bottom, and that prior to the building of this dike the water line ■“on the average” came to the edge of that rim, sometimes not that high but always in ¡times of heavy rains the pasture would be submerged for several days. In 1963 he dug a 16 inch dry well in his pasture to use for irrigation in dry weather and drainage in wet weather. Upon completion of the dike the water level of the lake was more stabilized and maintained a normal higher water level. In 1964 during an unusually wet period Hill’s dike broke, the 16 inch dry well was taking in water, and the water level of the lake dropped.
The only positive evidence as to the location of the dike and the normal water level of Alligator Lake was the testimony of appellant’s witness, Robert O. Vernon, a geologist, who testified that the high water mark is between 95 and 96 feet above sea level; that the normal water budget (rainfall necessary to maintain lake at a constant level) is 51 inches; that if Hill had not built the dike, the average annual rainfall since 1950 was such that Hill would have had no difficulty farming his pasture except in 1953 and the first part of 1959. Dr. Vernon marked the U. S. Geological Survey topographic map showing Hill’s dike well within the swamp area and not in the lake. The undisputed evidence is that Hill’s dikes are lower than those of his neighbor, Fraser; that Hill’s 150 foot spillway was constructed lower than his dikes and lower than the high water mark of two of his neighbors and so his pasture would be flooded before serious damage occurred to the other property owners in case of flood conditions.
The plaintiffs-appellees have wholly failed to prove that the Hill dike is within the ordinary highwater mark of the lake.
The plaintiffs prayed for and obtained a mandatory injunction requiring the defendants to cap their well or wells so as not to drain off any more lake waters. This order was complied with.
The trial court found that the effect of the construction by the defendants of the dike and the 16 inch well was (1) to cause water to back up .onto the lands of some of the plaintiffs who lived on the edge of the lake, (2) to make that portion of the lake *792 within the boundary of the dike inaccessible to the plaintiffs, and (3) to cause water to recede upon the breaking of the dike until the well was capped.
The trial court entered its final decree in favor of the plaintiffs, in which he stated that the case of Duval v. Thomas, 114 So.2d 791 (Fla., 1959) is controlling in this case, and thereupon made the temporary injunction permanent as to keeping the dry wells capped, ordered the defendants to open the dike on the north end of defendants’ land, and permanently enjoined the defendants from maintaining the present dike and “from constructing any other dike so as to prohibit the access by the plaintiffs to all portions of the lake.”
The factual situation in the Du-val v. Thomas case, supra, is foreign to the issues here. In Duval there was a definite design to cut off Thomas from the use of the lake and no other purpose to be served by Duval and Hruby. There was no question of fluctuation of water levels nor shore lines involved. Some of the dictum in Du-val v. Thomas, however, is applicable to the case sub judice, namely, one owner of a part of a non-navigable lake cannot cut off the other owners from using the entire lake. Involved in the case sub judice, we are confronted with land — swamp lands— which undisputedly, have been dry at least a goodly portion of the past 15 years, to such an extent cattle grazing and agricultural uses have been made of this bottom land. We agree that the defendants should be prohibited from building and maintaining such a structure by the lake that would damage the property of the other owners, or that would prevent access to the “lake waters” over the entire lake, but this does not prohibit the defendants from protecting their property from flash floods by properly prepared dikes and wells, if such can be done so as not to damage the property of others. The swamp lands cannot be classified as Lake Calm was in Duval v. Thomas. The order appealed is so broad in its scope that it classifies the defendants’ pasture as part of the lake and makes no' distinction as to the rights of the parties to trespass upon the defendants’ lands when the water had receded therefrom. We do-not agree that the plaintiffs have an unrestricted right to use the defendants’ property alleged to constitute part of the lake-bottom at times. The evidence is that an attempt was made by the defendants to-have such a spillway over their dikes that a water level could be maintained even at flood season, so as not to endanger the property on the other or remaining sides of the lake. The 16 inch well was to take-care of only the overflow from the spillway and accumulation of rain water within the diked area. This could not damage the other property owners provided the spillway was low enough and large enough to assure the maintaining of such water level. There being evidence before the court that this was the avowed purpose, coupled with the fact that much of the time defendants’ land was dry within the dike perimeter, we find that the court’s order prohibiting the defendants from constructing and maintaining any dike for control of water was too broad and far exceeding any conclusion of the Supreme Court in the Duval case.
The order appealed is reversed, and the case remanded to the trial court to enter a new order wherein the appellants’ right to protect their lands by a dike is preserved, but if this right is exercised, they are to be required to maintain the dike and provide an adequate spillway so that at no time will' the dike cause the water to back up on plaintiffs’ lands nor drain the lake below the normal highwater mark, and so long as they comply with these conditions in this manner they will not be required to cap the dry wells within their enclosure. The question of the right to boat and fish over the defendants’ pasture land when covered with water should not be granted the plaintiffs.
Reversed.
RAWLS, C. J., and SACK, J., concur.