SPECTOR, Chief Judge.
This is an appeal from a final judgment in an action brought to restrain appellees from ditching, diking and draining portions of an area in Alachua County, Florida, known as Levy Lake.
The judgment rendered below followed considerable testimony given by witnesses for both sides concerning the character of the area and the uses to which it has been and is being dedicated. The trial judge, with the consent of the parties, personally spent nearly a full day surveying and examining the area to assist him in the making of his findings and judgment.
Appellants contend that the case at bar should be reversed on authority of Duval v. Thomas, 114 So.2d 791 (Fla.1959), and like cases. We do not quarrel with the law as stated in the Duval case. In our view, however, the rule of Duval is inapplicable to the area involved in the case at bar. Rather, it seems to us that the facts pertaining to this case are distinguishable from those in Duval and thus are controlled by our ruling in Hill v. McDuffie, Fla.App., 196 So.2d 790. In Hill, we said at page 792:
“The factual situation in the Duval v. Thomas case, supra, is foreign to the issues here. In Duval there was a definite design to cut off Thomas from the use of the lake and no other purpose to be served by Duval and Hruby. There was no question of fluctuation of water levels nor shore lines involved. . The swamp lands cannot be classified as Lake Calm was in Duval v. Thomas. The order appealed is so broad in its scope that it classifies the defendants’ pasture as part of the lake and makes no distinction as to the rights of the parties to 'trespass upon the defendants’ lands when the water had receded therefrom.
*845 While we recognize the rule pronounced in Duval v. Thomas, we deem it important to point out that there are so-called lakes in Florida which are often indistinguishable from swamp and overflow lands and which are often more deserving of the appellation “swamp or marsh” than “lake”. In the case at bar, the trial court obviously found that the characteristics of Lake Levy are not materially unlike those of the eastern portion of Alligator Lake in Columbia County, which was the subject of the Hill case, supra.
In its final judgment, the trial court made the following findings of fact regarding the area here in controversy:
“1. The area involved in this litiation and known as Levy Lake, herein referred t.o as 'area,’ lies entirely within Alachua County and consists of some six (6) square miles of low flat land which serves as a drainage basin for a large tract of surrounding highland. The area is located wholly within the Arredondo Grant, a Spanish grant which was recognized and affirmed by the Supreme Court of the United States in the case of United States v. Arredondo as reported in Vol. 6, Peters Reports, page 691, 8 L.Ed. 547 and neither the United States of America nor the State of Florida or any agency of either has ever owned title to any of the land owned by the Defendants and involved in this litigation.
“2. The area is non-navigable and all of the lands in said area are privately owned.
“3. Within the area there are a few scattered holes which seldom, if ever, are completely dry. There is no well defined or even discernible channel or stream connecting these holes although the level of the water in the area is generally of sufficient depth to join them. The main body of the area is usually covered with a shallow body of water of varying depths of from zero to three feet, depending directly on the amount of rainfall in the vicinity.
“4. Predominately, the area is covered at all stages with various types of aquatic and semi-aquatic vegetation, the most abundant of which are maidencane, picker-elweed, water-lily, arrowhead, water hyacinth, button bush, dog fennel and a wide variety of grasses. There is some open water in the area which is generally located in the vicinity of the few scattered holes, but the general characteristic of the area is ‘marsh’ or ‘prairie’.
“5. The area has been given a soil classification by the Soil Conservation Service of the United States Department of Agriculture of Type 24-B (Bayboro Placid Association) defined as low, wet flatlands with soils that have gray sandy surface soils and very strongly acid mottled loamy or clayey subsoils; interspersed with small areas that are very poorly drained deep sands with thick black surface layers. This classification distinguishes the area from lakes in the county which consist of large areas of open water and are not given a soil type classification by the United States Department of Agriculture, Soil Conservation Service.
“6. The natural drainage of the area is from east to west into a sinkhole on the western edge of the area and through a slough leading from the western extremity of the area into another sink some miles away. The actions of the Defendants in bringing their lands under effective water control are being so conducted as not to interfere with the natural drainage of the area.
“7. The uplands surrounding the area have been historically used for agricultural purposes primarily devoted to the raising of livestock; the fluctuation of the water level of the area has allowed it to be used from time to time in varying degrees for the same purpose.
“8. The Plaintiffs own some 214 acres of land, approximately 35 acres of which comprise a part of the bottom land of the area. The Defendants own substantially *846 the remainder of the bottom land; some additional portions are owned by third persons who are not parties to this litigation.
“9. The Defendants, acting independently of each other, are in the process of constructing a series of dikes and canals on their respective bottom lands in order to bring them under effective water control.
“10. The Defendant, RAMSEY STOCK FARMS, INC., for three generations of the Ramsey family, has historically used its property in the Levy Lake area, both upland and lowland, for agricultural purposes devoted primarily to raising livestock and will, upon completion of its plans, bring under effective water control some 83S acres of the 1150 acres of area bottom land owned by it.
“11. The Defendant, V. E. WHITE-HURST & SONS, INC., and its predecessors in title have historically used its property in the Levy Lake area, both upland and lowland, for purposes of raising livestock and will, upon completion of its plans, bring under effective water control approximately 2000 acres of the 2500 acres of bottom land owned by it.
“12. The actions of the Defendants in bringing their respective lands under effective water control are necessary for their proper development and constitute a reasonable use of such lands compatible with the highest and best use to which the same may be applied.
“13. The actions of the Defendants in bringing their respective lands under effective water control are not causing water to be drained from area bottom lands owned by the Plaintiffs.
“14. Plaintiffs have made little use of their land other than to allow their guests, conditions permitting, to use the same as a base from which to hunt and fish over the area including the lands of the two Defendants.
“15. The provisions of Section 298.74 Florida Statutes, F.S.A., are applicable only in those instances where the water level of a lake having an area greater than 2 square miles is being lowered on the land of an abutting property owner; therefore, that statute is not applicable in this case for the Court has found that the water level over the area bottom lands of the Plaintiffs is not being lowered by the actions of the Defendants.”
The foregoing findings of fact support the trial judge’s conclusion that the diking and ditching operations of the appellees do not unreasonably interfere with the appellants’ exercise of such rights as they may have to usefully go upon the surface of ap-pellees’ lands on which are located the open waters of the Lake Levy area. Ap-pellees’ use of their land for cattle grazing purposes is certainly a reasonable use of an area which can generally be traversed only by the use of airboats or on foot. The trial court bottomed its decision on the “reasonable use” theory discussed in 34 Fla.Jur., Waters and Watercourses, § 40-41, and in essence found that the ditching and diking operations by the appellees did not substantially impair appellants’ use of the portions of the area which were primarily suited to the recreational purposes of the appellants. Thus, appellants are still able, the ditches and diking notwithstanding, to reach the deeper holes and surrounding open waters in the customary manner with an airboat or on foot. The trial court did not expressly rule on the question of whether Levy Lake is a lake though there was some evidence characterizing the vegetation in the area as being similar to the nearby Payne’s Prairie, also known as Alachua Lake.
In Baker v. State ex rel. Jones, 87 So.2d 497 (Fla.1956), the court considered a case involving the question of whether an arm of Lake Iamonia which had been leased for agricultural purposes was in fact a lake. There the court on evidence some *847 what similar to that presented to the trial court in the case at bar rejected the contention that the area was navigable, stating at page 498:
“ . . . The evidence as a whole shows that Cromartie Arm in its natural or ordinary state is grass or button wood prairie, traversed by a shallow stream or strand and that normally its width is from four to ten feet, and that its depth is shallow, not exceeding two feet at best. It is difficult to push a flat bottomed row boat over; one witness testified that it was so difficult to get a row boat over it that one had to ‘push, cuss and holler’ at the same time to make it go. Cromartie Arm is about one and one-half miles long and the stream or strand connects some pot holes or gator burrows ranging in size from that of Leon County Court Room to an acre. Except during a flood stage the stream or strand could not be traversed with a ‘kicker’ but could be negotiated with a pole.
“The evidence as a whole refutes the idea that Cromartie Arm is navigable for any useful public purpose, or that it is covered with water of permanent character that is susceptible of navigation for purposes common to the public in the community where it is located or that it is of sufficient size for that purpose. It is not shown that it is desirable for navigation purposes, that anyone ever attempted to use it for commercial water transportation or that it is suitable for pleasure boating or that it is desirable for bathing or fishing. In fact, the evidence as a whole falls far short of showing navigability by the test defined in the state and federal cases cited herein. The fact that it was meandered when the government surveys were made in 1824 does not, with nothing more, establish navigability. . . . ”
We have considered the remaining points raised by appellants and find them to be substantially without merit.
In view of the foregoing findings made by the trial court after considering the evidence adduced, including his personal examination of the area, we hold that this case is controlled by our decision in Hill v. McDuffie, supra, and that the judgment reviewed herein should therefore be
Affirmed.
RAWLS, J., and POWELL, GILLIS E„ Associate Judge, concur.