114 So.2d 791 (1959)
Elizabeth J. DUVAL, Petitioner,
v.
Vernon T. THOMAS and Ruby Lee Thomas, Respondents.
Marian HRUBY, Petitioner,
v.
Vernon T. THOMAS and Ruby Lee Thomas, Respondents.
Supreme Court of Florida.
July 17, 1959.
Rehearing Denied September 24, 1959.
Mabry, Reaves, Carlton, Fields & Ward and O.K. Reaves, Tampa, for Elizabeth J. Duval, petitioner.
G. Richard Christ, Tampa, for Marian Hruby, petitioner.
John S. Berry, Tampa, for respondents.
THOMAS, Chief Justice.
These two cases have reached this court via petitions for certiorari to review a decision of the District Court of Appeal, Second District, which decided both appeals in one opinion. Duval v. Thomas, Fla.App., 107 So.2d 148. Because of the identicalness of the salient facts and the points of law involved we will treat them in the same manner.
Briefly, the reason this court entertains jurisdiction is the apparent conflict among *792 our decisions and consequently between some of them and the one of the District Court of Appeal in the instant case, with reference to the application of the common law and civil law doctrines to the rights of owners of property such as we will now describe.
In order more clearly to present the facts, we will, at the outset, record a rough sketch of the locale.
Further to simplify the statement of fact we will refer to the respondents, who were successful in the circuit court and District Court of Appeal, as "Thomas" and to the petitioners, owners of adjoining land, as "Duval" and "Hruby". The lake is non-navigable and land-locked and is wholly owned by the parties litigant and, presumably, by others who are not parties to this litigation.
The controversy arose when Duval placed a barrier of soil in the lake along the north boundary of her property to the corner common to the land of herself, *793 Hruby and Thomas, and Hruby constructed a fence on her west line from the shore to the common corner. By these methods Thomas' use of the lake was restricted to the small "wedge-shaped" area defined by his east and south lines and the lake shore between them.
Thomas sought relief from this obstruction against his access to the lake and was awarded a decree.
The chancellor held that the actions of Duval and Hruby served no proper purpose and constituted an unreasonable use of the portion of the lake affected so he ordered them to remove the barriers they had constructed and to restore the natural shore line and, moreover, he enjoined them from a repetition of their actions in this respect.
The ultimate question is whether an owner of property with certain of its boundaries under the water of a lake, such as Lake Calm, has exclusive dominion over it and, by the same token, is confined to his own boundaries or whether all similarly situated owners may use all of the lake for boating, bathing and fishing so long as none interferes with the rights of the others.
It is argued that under the common law doctrine only the owner could use the water overlying his fee, Smoulter v. Boyd, 1904, 209 Pa. 146, 58 A. 144, 66 L.R.A. 829, while under the doctrine of the civil law the whole lake could be used by any owner of a part of the bottom subject, of course, to the rights of those in like situation. Snively v. Jaber, 1956, 48 Wash.2d 815, 296 P.2d 1015, 57 A.L.R.2d 560. In view of the presence in Florida of literally thousands of lakes the question is one of considerable importance.
With this brief preface, we go now to a consideration first of the common law doctrine and a study of the reasons it should be accepted, or rejected. In effect, the District Court of Appeal after a learned discussion of the legal questions presented held that the civil law doctrine did apply and affirmed the chancellor's decision.
On behalf of one of petitioners it is asserted that the decision of the District Court of Appeal collides with the ruling of this court in Osceola County v. Triple E. Development Company, Fla., 90 So.2d 600, in which they think this court embraced the common law rule because of the language that inland lakes are subject to private ownership and when so owned are not accessible to the public or adjacent owners whose titles extend only to the water's edge. But it seems to us that the controlling facts in that litigation are so unlike those with which we are dealing that the judgment did not amount to a commitment of this court to the common law as distinguished from the civil law principle.
The lake in question was entirely owned by one corporation, so that it was impossible for anyone to reach it except by trespassing. The attempt to open the lake to the use of the public was made by condemnation to secure a right-of-way from a nearby highway to the shore. Obviously, an easement for a "public way over private property" was sought in order to admit the public to the lake. "Such an appropriation * * * [was held not to be one] for a public purpose" and was disapproved. We consider that it would not be logical to place the county in that case in the same position as Thomas in this one, or the owner of an entire lake in the same position as Duval and Hruby. There was no pretense that property appropriated by eminent domain would have amounted to more than an easement to the water's edge over private property of the lake owner.
The decision that a lake could be actually owned was a recognition by the court of an element both of the civil and common law doctrines, but it did not bind us to the latter. And, inasmuch as but one owner was then involved the opinion does not aid us in determining relative rights when a lake is owned by two or more persons.
*794 A study of the decision in Pounds v. Darling, 75 Fla. 125, 77 So. 666, L.R.A. 1918E, 949, does not reveal any language that could be said to recognize a common law doctrine that each owner of a portion of a lake bed should be restricted to the use of the water within the boundaries of his property. It was merely held in that case that the city of Orlando could not prevent owners of lots abutting a lake from bathing in its water because such would amount to taking property without due process of law, but the litigation did not involve a decision about the rights of the owners of the bed in relation to one another. We do not construe the decision as a pronouncement that in such a situation each owner could disport only within the confines of his own land lines. The question was, rather, whether or not all owners could be prohibited from bathing in the waters of a lake as a whole because it was used, presumably by consent, as a source of water for the city.
It is further asserted that the decision we are reviewing directly conflicts with a ruling of this court that a person owning land has the exclusive right to hunt game on it subject to lawful regulation by the state. Hamilton v. Williams, 145 Fla. 697, 200 So. 80. Here, too, the element of trespass is involved and to bring the decision into conflict with the one being considered would require adoption of the view that once a person came upon a lake, like Lake Calm, he would trespass if he crossed the underwater lines of the property he had lawfully entered.
It appears that such a trespass was recognized by this court in Clement v. Wilson, 63 Fla. 109, 58 So. 25. The appellant had gone upon a non-navigable cove and had been there assaulted by the appellee whose wife owned all the land around the cove except the mouth which joined it with New River Sound. The court held that the appellant could not recover for an unlawful assault inasmuch as he was a trespasser. But it should be stressed that the body of water was wholly owned by the appellee's wife and there was therefore no way for the appellant to enter it across his own property. At a glance the case seems to give the petitioners some comfort but there was a total absence of the problem of corresponding rights such as are present in the instant case arising from the use of a lake by those owning its shores and bed, and the decision is not in our opinion determinative of the present point.
It is argued that despite the efficacy in Florida of the English common law in effect 4 July 1776, Sec. 2.01, Florida Statutes 1955, and F.S.A., the District Court of Appeal disregarded it and adopted instead the rule of the civil law. In this regard the following language of this court in Ripley v. Ewell, Fla., 61 So.2d 420, 423, is significant:
"When the rules of the common law are in doubt, or when a factual situation is presented which is not within the established precedents, we are sometimes called upon to determine what general principles are to be applied, and in doing this we, of necessity, exercise a broad judicial discretion. It is only proper that in such cases we take into account the changes in our social and economic customs and present day conceptions of right and justice. When the common law is clear we have no power to change it."
It does not seem to us that we are obligated in a case of this kind to embrace the view that by clear provisions of the common law the owners should be restricted to operations within their own land lines. On the contrary, we feel free to announce that the body of water should be available to all owners for use that would not unreasonably interfere with rights of the other proprietors. If the use by any owner amounts to transgression of the rights of his neighbors, the violation can be remedied by recourse in the courts.
*795 We think the situation of Thomas is a classic example of the unpleasant and impractical state of affairs that would result from the application of a rule that each owner could erect a barricade on his boundary line, though it was of the kind, such as a fence, that would not disturb the waters in place, but would prevent adjacent owners from enjoying the ordinary pleasures of the lake.
Having concluded that we are not bound to the common law rule as it is defined by the petitioners, we exercise the discretion recognized in Ripley v. Ewell, supra, and adopt the civil rule. In doing so we do not disturb the decision of the District Court of Appeal and do not lack company in other jurisdictions. Snively v. Jaber, supra, cases annotated in 57 A.L.R.2d 569, 592.
We are not advised, and our own research has not divulged the clear, unambiguous pronouncement of the common law in effect 4 July 1776, that would leave us no room but to adopt it in this case under the mandate of Sec. 2.01, supra. Waller v. First Savings & Trust Co., 103 Fla. 1025, 138 So. 780; Banfield v. Addington, 104 Fla. 661, 140 So. 893. As has been remarked by this court, when grave doubt exists of a true common law doctrine such as would govern dual or multiple ownership of property like Lake Calm, we may, as was written in Ripley v. Ewell, supra, exercise a "broad discretion" taking "into account the changes in our social and economic customs and present day conceptions of right and justice." It is, to repeat, only when the common law is plain that we must observe it.
In making the observation that the common law relating to the question involved is unclear, we have not disregarded decisions of the courts of other states defining and applying it. Illustrative of these are Lamprey v. Danz, 86 Minn. 317, 90 N.W. 578, and Sanders v. DeRose, 207 Ind. 90, 191 N.E. 331. See Linthicum v. Shipley, 140 Md. 96, 116 A. 871, 23 A.L.R. 754, and note. But we have not found cases from the English courts, and have been cited none, fixing the relative rights of owners of the bed of a lake of the nature of Lake Calm.
We take judicial knowledge of the importance of `tourism' to our state. Florida is advertised as a playground, a retreat from the hurryscurry of the modern world and from the rigors of northern climes. Fishing and swimming are prominent if not principal items of the entertainment the stranger expects to find here. If the enjoyment of non-navigable lakes were to be curtailed or restricted by a holding that the owner of a portion of one of them, and his guests, should enjoy the waters only within the property lines the damage would be immeasurable.
We lean to the more liberal rule and we think we may be kept from falling, into error, by the obscureness of the common law rule, the resultant power to use our own discretion, the practicalities of the matter and the expressions in our own opinions.
Although we considered that there was apparent conflict justifying our taking jurisdiction we conclude after careful study there is none, so we discharge the writs of certiorari.
TERRELL, HOBSON, THORNAL and O'CONNELL, JJ., concur.