315 So.2d 98 (1975)
PUBLIX SUPER MARKETS, INC., a Florida Corporation, Appellant,
v.
R.E. PEARSON et al., Appellees.
No. 74-38.
District Court of Appeal of Florida, Second District.
June 25, 1975.
J. Hardin Peterson, Jr., of Peterson, Carr, Harris & Seacrest, Lakeland, and Frank E. Maloney, Gainesville, for appellant.
Lex Taylor, Lakeland, for appellees.

ON PETITION FOR REHEARING
PER CURIAM.
This is an interlocutory appeal from an order of the Circuit Court of Polk County, Florida, which granted a temporary injunction against the appellant, Publix, in favor of the appellees, R.E. Pearson and Patricia Pearson, his wife, and Aubry L. Harper and Gloria Harper, his wife. The appellees filed a complaint seeking, inter alia, to prohibit the appellant from reclaiming and filling approximately ten acres of water-filled phosphate pits located on its lands situate in Polk County. After hearing and based upon the pleadings filed and consideration of the stipulation agreed to by the parties, which resolved all factual issues, and the exhibits submitted by the respective parties, the circuit judge found that such reclamation would be an unreasonable use of the appellant's lands and that it would significantly impair the use and enjoyment of the entire surface water of the phosphate pits into which appellees' residential property extends. The circuit judge enjoined appellant from proceeding with its proposed reclamation and development *99 of the phosphate pits and, at the same hearing, denied appellant's motion to dismiss the appellees' complaint. This interlocutory appeal is filed from that order.
The parties agreed that the sole question for the trial court was whether the phosphate pits, or water bodies, comprising approximately 47 acres, resulting from phosphate mining operations prior to the year 1960, and commonly called phosphate pits, are subject to the same riparian rights as natural, nonnavigable lakes.
The trial court's decision was based upon the principle of law enunciated in the case of Duval v. Thomas, Fla. 1959, 114 So.2d 791, which established the proprietary rights of riparian owners in and to nonnavigable, natural lakes. In its conclusions of law, the trial court in the instant case found:
... The facts, circumstances and respective positions of the parties in the case sub judice are poles apart from those in Duval. However, the legal principles of rights to use of the water in a nonnavigable water body are the same.
Under the factual situation presented in the case before us, we have been unable to find any authority in Florida law to support the trial court's decision in extending the application of the principles of Duval, supra, to artificial water bodies formed as a result of surface mining operations long since discontinued. The facts agreed upon by the parties disclose that appellant owns portions of five water-filled, finger-like phosphate pits which are joined along the northerly extension of the elongated pits to form a hand-shaped water body. We point out that the eminent trial judge found from examination of one of appellees' exhibits that it does not appear that the western most pit is so connected.
This unnamed artificial water body, around which no planned development has been made, encompasses, as stated, 47 acres and was formed as a result of surface mining operations prior to 1960. Appellant proposes to develop a shopping center by filling ten acres of the two westerly pits by excavation of the spoil banks dividing the fingers by installation of impervious steel plates along its northern boundary. Appellant's plans include construction of a drainage lake to retain run-off from the shopping center parking lot. Although the appellant owns a portion of the eastern most pit, into which the appellees' property extends, no filling will occur at that place. As a consequence of the proposed construction, the southern most portion of the four westerly pits will be dredged and filled, thereby cutting off appellees' use of and access to said portions of the existing water body.
The property of the appellees, upon which they have built homes of substantial value, borders on and extends into the eastern most and largest pit. The parties have stipulated that appellant's reclamation will not disturb the waters or the ecology or the use and enjoyment of the water of the remaining pits, except to cut off access to and use of the surface waters of the westerly pits for fishing and boating.
Our research of the law applicable discloses that there is little or no case law in Florida or other jurisdictions which is helpful in arriving at a proper answer to the question presented to us relating to the problems concerning the rights of parties in artificial water bodies.[1] As a general proposition, it has been held that riparian rights do not ordinarily attach to artificial water bodies or streams,[2] although in Silver *100 Blue Lake Apartments, Inc. v. Silver Blue Lake Home Owners Association, Inc., Fla. 1971, 245 So.2d 609, the Supreme Court of Florida did prohibit the unreasonable use of an artificial lake by tenants of an abutting land owner. In Silver Blue Lake the artificial water body was originally created by limerock excavations and was subsequently named Silver Blue Lake. We believe that the Silver Blue Lake case is distinguishable from the instant case for the reason that in the cited case the water body was specifically incorporated into the subdivision and the deeds of conveyance to the property owner fronting the water contained deed restrictions allowing said owners to use the lake.[3] Consequently, we do not regard that case as conclusive authority for applying the Duval supra, principle of riparian rights to these particular surface pits.
The Supreme Court of Florida in Duval, supra, adopted the civil law rule defining littoral rights in nonnavigable, natural lakes, which doctrine permits reasonable use of the entire water body by each individual owning a part of the water bed and denies to any one owner the right to fill or otherwise exclude other persons who also own part of the lake bed. As we construe Duval, the principle pronounced therein is applicable only to nonnavigable, natural lakes and does not expressly extend to artificial lakes and, a fortiori, cannot reasonably be interpreted to extend to water-filled phosphate pits that are the result of phosphate mining operations.
We mention that there are other legal distinctions which have been made between natural and artificial geological conditions. Artificial water bodies have been differentiated from natural bodies or lakes for tort law purposes. See, Allen v. William P. McDonald Corp., Fla. 1949, 42 So.2d 706. Statutory mandates[4] have made a distinction between artificial pits or holes which may create safety hazards and natural depressions in the earth. Dutton Phosphate Co. v. Priest, 1914, 67 Fla. 370, 65 So. 282.
The Wisconsin Supreme Court in Mayer v. Grueber, 1965, 29 Wis.2d 168, 138 N.W.2d 197, was faced with the problem of determining relative rights to a water-filled gravel pit. After a comprehensive examination of authorities on riparian ownership, that court concluded:
The right to use an artificial lake as well as the right to the bed of the lake are incidents of ownership that are vested exclusively in the owner of the fee upon which the lake is located. If he is to be divested of these rights, it can only be by deed or the eventual acquisition of these rights by prescription or adverse possession... .
[138 N.W.2d, page 205].
We reiterate that the phosphate pits here are not encircled by a subdivision, nor have they been dedicated to recreational use by means of deed restriction as in Silver Blue Lake Apartments, supra. The water body has also never been denoted by a name or designation other than phosphate pits. Since the origins of the pits date only to 1957, no prescriptive rights have so far been acquired between the parties, or the other owners of the pit bed.
*101 Therefore, it is our opinion that appellees have no greater rights to the waters of the phosphate pits than an owner of land whose dominion over the fee is confined within his legal boundaries. Consequently, we find that these water-filled phosphate pits, resulting from phosphate mining operations prior to 1960, are not subject to the same riparian rights as natural, nonnavigable lakes as defined in Duval v. Thomas, supra.
For the foregoing reasons, we conclude that the order of the circuit court granting the motion for a temporary injunction is hereby reversed with directions to the trial court to enter an order dissolving the temporary injunction and granting appellant's motion to dismiss with prejudice.
Reversed and remanded.
HOBSON, Acting C.J., and BOARDMAN and SCHEB, JJ., concur.
NOTES
[1] For an excellent discussion of these problems see, Maloney, Plager, Baldwin, Water Law and Administration, The Florida Experience, 60-65, (1968).
[2] See, e.g., United States v. 1,629.6 Acres of Land, 335 F. Supp. 255 (D.Del. 1971); Bollinger v. Henry, 375 S.W.2d 161 (Mo. 1964); Drainage District No. 1 of Lincoln County v. Suburban Irrigation District, 139 Neb. 333, 297 N.W. 645 (1941); quoting 56 Am.Jur., Waters § 155 (1956) [Much of the case law relating to artificial water bodies concerns questions of relative rights in artificially created lakes, the result of dams built in streams, and drainage rights in irrigation canals. Not only are the authorities divided, but there is considerable confusion as to the legal theory supporting rights in an artificial water body, corresponding to riparian rights in natural lakes. For a discussion of these theories see, annot. 88 A.L.R. 130 (1934) as updated; Evans, Riparian Rights in Lakes and Streams, 16 Mo.L.Rev. 93 (1951).]
[3] The use of the waters of an artificial lake are often determined by means of restrictive covenants in deeds or recorded plats dedicating an easement for recreational uses. See, Wilson v. Owen, 261 S.W.2d 19 (Mo. 1953); Reiger v. Anchor Post Products, Inc., Fla.App.3d 1968, 210 So.2d 283.
[4] Florida Statutes, Section 768.10.