412 S.E.2d 490

**Jack R. OURS, G.R. Ours, Jr., and Addie M. Ours, Petitioners Below, Appellees,**

v.

**GRACE PROPERTY, INC., A West Virginia Corporation, Respondent Below, Appellant.**

No. 20157.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 1991.

Decided Dec. 11, 1991.

---

John G. Ours, Petersburg, for appellees.

Clyde M. See, Jr., See, Walter & Krauskopf, Moorefield, for appellant.

WORKMAN, Justice:

This case is before the Court upon an appeal from the October 4, 1990, final order of the Circuit Court of Hardy County which granted a permanent injunction in favor of the appellees. This injunction enjoined the appellant, Grace Development Company (hereinafter referred to as Grace), from using a road constructed by Grace on the land owned by the appellees, without the appellees' permission,[1] and prohibited the appellant from using the water overlying the land owned by the appellee. The appellant contends that the lower court committed the following errors: 1) the court erred in adopting the view that Grace is entitled to use only the portion of the surface water of Shook's Run Lake which overlies Grace's land; 2) the court erred in not giving the proper force and effect to the easements granted to the surface waters of Shook's Run Lake; and 3) the court erred in not giving the proper force and effect to the riparian rights of Grace as these rights relate to Shook's Run Lake. After reviewing all matters of record in this case, we find no errors were committed by the lower court and we therefore affirm.

The facts of this case center upon a man-made lake, commonly known as Shook's Run Lake, which is located behind Shook's Run Dam. The land underlying the lake is entirely privately owned by the appellant and the appellees. It is undisputed that a majority of the land underneath the lake, approximately 98%,[2] is owned by the appellees. The appellant owns a small narrow strip of the lake located in the southeastern corner which constitutes only about 2% of Shooks Run Lake.

Further, the facts indicate that the construction of the dam which created the lake was made possible when each party separately conveyed an easement to the Potomac Valley Soil Conservation District (hereinafter referred to as Potomac Valley). The respective easements provided for the "construction, operation, maintenance and inspection" of a flood retarding dam; for the "flowage of any waters in, over, upon or through" the flood control dam; and for the "permanent storage and temporary detention, either or both, of any waters that are impounded, stored or detained" by the flood control dam.

The appellant is a corporation of approximately 400 shareholders which acquired ownership of some 12,000 acres of land in 1986 including 2% of Shook's Run Lake. The property was acquired so that its shareholders, shareholders' families and guests could use the land for hunting and other recreational purposes. Pursuant to the rules of the corporation, shareholders were informed that "[a] small section of the shoreline of the Shook[']s Run Lake is on the [corporation's] property," and that "[s]hareholders, family members and guests may fish from the shoreline owned by the corporation or from boats that are launched from the shoreline owned by the corporation. (Please remember that the other owners of the shoreline have the same rights)."

Accordingly, members of the corporation began using not only that shoreline owned by the corporation, but the entire shoreline. Moreover, members began using their boats over the entire lake, and also tied or moored the boats, when not in use, to the appellees' shoreline, without the appellees' permission.

Finally, in the summer of 1989, the appellant built an access road to the southeast corner of the lake. Approximately 50% of

---

1. It is clear from a review of the petition that the appellant does not dispute this portion of the judge's ruling. Assignments of error not argued on appeal are deemed waived by this Court. Syl. Pt. 6, *Addair v. Bryant*, 168 W.Va. 306, 284 S.E.2d 374 (1981).

2. The appellant concedes that a majority of the land underneath the lake is owned by the appellees, but maintains that the exact percentage of ownership can only be ascertained by having the land surveyed. The appellees' ownership percentage is based upon the description of their property found in their deed to the property.

the road was built on the appellee's property without the appellee's consent. Based upon these facts, the appellees' sought and obtained a permanent injunction against the appellant.

### COMMON LAW v. CIVIL LAW

The issue of who has control over the use of surface waters above a lake bed owned by two or more adjoining land owners is one of first impression for this Court. The appellant maintains that the lower court erred in adopting the view that Grace is only entitled to use that portion of Shook's Run Lake which overlies the land owned by Grace. The appellee, on the other hand, argues that the trial court was correct in concluding that the appellees have the exclusive right to use the surface water over their land.

■ A split of authority exists among the jurisdictions which have dealt with this issue. The majority of courts have followed the common-law rule. Under the common-law rule, the owner of a portion of the land underlying surface waters has the exclusive right to control the water above that property. *Beacham v. Lake Zurich Property Owners Ass'n*, 123 Ill.2d 227, 122 Ill.Dec. 14, 16, 526 N.E.2d 154, 156 (1988). Consequently, the owner of a portion of a lake bed has the right to exclude others, including any other owners of the lake bed, from using his property. *Beacham*, 122 Ill.Dec. at 16–17, 526 N.E.2d at 156–57 (citing *Medlock v. Galbreath*, 208 Ark. 681, 187 S.W.2d 545 (1945); *Lanier v. Ocean Pond Fishing Club, Inc.*, 253 Ga. 549, 322 S.E.2d 494 (1984); *Sanders v. De Rose*, 207 Ind. 90, 191 N.E. 331 (1934); *Baker v. Normanoch Ass'n, Inc.*, 25 N.J. 407, 136 A.2d 645 (1957); *Commonwealth Water Co. v. Brunner*, 175 A.D. 153, 161 N.Y.S. 794 (1916); *Smoulter v. Boyd*, 209 Pa. 146, 58 A. 144 (1904); *Taylor Fishing Club v. Hammett*, 88 S.W.2d 127 (Tex.Civ.App. 1935); *Wickouski v. Swift*, 203 Va. 467, 124 S.E.2d 892 (1962)).

■ Other jurisdictions have adopted a civil-law rule. Utilizing this rule, the owner of part of the land underlying a lake has the right to the reasonable use and enjoyment of the entire lake. *Beacham*, 122

Ill.Dec. at 17, 526 N.E.2d at 157 (citing *Duval v. Thomas*, 114 So.2d 791 (Fla.1959); *Beach v. Hayner*, 207 Mich. 93, 173 N.W. 487 (1919); *Johnson v. Seifert*, 257 Minn. 159, 100 N.W.2d 689 (1960); *Snively v. Jaber*, 48 Wash.2d 815, 296 P.2d 1015 (1956)). The states which have adopted the civil-law rule have been concerned with promoting the recreational use and enjoyment of lakes, have an extensive number of lakes with recreational value, or have been concerned with attempts to establish and obey definite property lines where several adjoining owners are involved. *See Beacham*, 122 Ill.Dec. at 17, 526 N.E.2d at 157; *Johnson*, 100 N.W.2d at 696; *Duval*, 114 So.2d at 795.

The Supreme Court of Appeals of Virginia, in the *Wickouski* case, had to determine a case factually analogous to the present one. In that case, the Swifts and Wickouskis were co-owners of a portion of a pond. The Swifts sought to keep the Wickouskis from boating, trapping and fishing on their portion of the land and from inviting others to use their part of the pond. 124 S.E.2d at 892.

In *Wickouski*, the pond at issue was a nonnavigable body of water created by a dam. Further, the title to and boundaries of the surface and submerged property were not in dispute. Finally, the majority of the pond and the land underneath it, or approximately 28 acres, was owned in fee simple absolute by the Swifts, with the Wickouskis owning approximately 1.3 acres of land covered by the pond. *Id.* at 893.

The court, following the common-law rule, held that "the complainants [Swifts] have exclusive control and use of the waters above their portion of the bed of the pond, and . . . they have the right to erect a fence on their boundary line across the pond to prohibit others from boating, fishing and trapping on their property." *Id.* at 895.

Similarly, the facts of this case quite clearly demonstrate that the appellees own the majority of the land beneath Shook's Run Lake. Moreover, a clear harm will be inflicted upon the appellees' use and enjoy-

ment of their property if the appellant is permitted to have control over the entire lake based upon a mere 2% ownership of the lake. This harm arises from the appellant's disproportionate amount of potential users [3] of the lake in relation to the appellant's ownership. Finally, there is nothing in the record which would indicate that when the appellees granted the easement which allowed for the construction of the dam, that the lake was going to bring a substantial number of recreational users onto their land.

■ Based upon these facts, we also choose to follow the common-law rule in holding that where ownership of the land underlying a man-made lake is clear and distinct, the owner of a portion of the lake bed has the exclusive control and use of the water above the portion of the lake bed which he owns. Further, the owner has a right to exclude others, including other adjoining owners of the lake bed, by erecting a fence or other barrier to prohibit others from utilizing the water which overlies his property.

Since the common-law rule was applied in issuing the injunction against the appellant, we find no error was committed by the trial court.

### EFFECT OF THE EASEMENT

■ The next assignment of error involves whether the trial court gave the proper force and effect to the easements granted to the surface waters of Shook's Run Dam. The appellant maintains that the provisions of the easement granting Potomac Valley the right to operate and maintain the dam gives Potomac Valley an easement over the entire lake and therefore, appellees cannot renounce, rescind or alter the rights granted under the easement to Potomac Valley. Moreover, since Potomac Valley does not restrict the uses of the lake, neither can the appellees.

In contrast, the appellees contend that the trial court made no error in finding that Potomac Valley acquired no right to convey

to any other person or entity any right or interest beyond that acquired by it, by virtue of the easements. The appellees argue that the only right acquired by Potomac Valley was simply the right to construct and maintain the flood control project.

It is evident from the easement granted to Potomac Valley by the appellees that nothing more than the right to construct, operate and maintain a dam located on the appellees' and the appellant's property was acquired by Potomac Valley. The appellant's attempt to persuade this Court to find anything more than this acquisition by Potomac Valley is tenuous at best.

The language granting the easement specifically states that the appellees as grantor

do[ ] hereby grant, bargain, sell, convey and release unto Potomac Valley Soil Conservation District ... an easement in, over and upon a portion of the following described land ... for the purposes of: For or in connection with the construction, operation, maintenance, and inspection of a floodwater retarding structure, designated as site [No.] or #1 in the plans for South Fork ... Watershed, to be located on the above described land; for the flowage of any waters in, over, upon, or through such structure; and for the permanent storage and temporary detention, either or both, of any waters that are impounded, stored or detained by such structure.

However, the appellees specifically restricted the grant of this easement in the following provision:

There is reserved to the Grantor, his heirs and assigns, the right and privilege to use the above described land of the Grantor at any time, in any manner and for any purpose not inconsistent with the full use and enjoyment by the Grantee, its successors and assigns, of the rights and privileges herein granted.

Consequently when these provisions are read together, it is obvious that the appellees did not grant to Potomac Valley any right to convey to any other person or

**3.** The facts before the trial court indicated that Grace already has 400 members who would

have access to the lake and this does not include family members and guests.

entity the right to use the appellees' property for anything other than constructing, maintaining and operating the dam. Thus, we affirm the lower court's ruling on this matter.

## RIPARIAN RIGHTS

The last issue raised by the appellant is whether the lower court erred in not giving the proper force and effect to the appellant's riparian rights as those rights relate to Shook's Run Lake. The appellant maintains that since it owns a portion of the shoreline of the lake it has the right to use all the water of the entire lake for recreational and other purposes without regard to the ownership of the lake bed. The appellees, however, maintain that riparian rights deal with the rights of shore owners of navigable streams and waterways and natural lakes, not man-made lakes or impoundments where the boundaries of land underlying the water, prior to the water being impounded, were known to the parties.

 "[R]iparian rights do not stem from the ownership of the lake-bed but from shore ownership...." *Johnson*, 100 N.W.2d at 694. Thus, a riparian owner is one who bases his right to use a lake upon the fact that his land abuts upon the lake. 78 Am.Jur.2d *Waters* § 260 (1975 and Supp.1991). Moreover, the general rule is that riparian rights do not ordinarily attach to artificial bodies of water which necessarily includes a man-made lake. *See Publix Super Markets, Inc. v. Pearson*, 315 So.2d 98 (Fla.App.1975), *cert. denied*, 330 So.2d 20 (Fla.1976).

It is clear from the facts before this Court that riparian rights are not involved since the lake is man-made and since claim to ownership in the lake is based upon deeds acquired by each of the parties which granted the respective parties a portion of the lake bed.

Therefore, we adhere to the general rule that:

'[i]n cases where various parts of the soil under a private lake are owned by different persons, and in which it does not appear that ownership was based on riparian rights, it has generally been held that each owner has exclusive rights to the use of the surface of the water over his land, or at least that the owner of a larger portion can exclude from it the owner of a small portion.'

*Wickouski*, 124 S.E.2d at 894 (quoting Annotation, *Rights of Fishing, Boating, Bathing, or the Like in Inland Lakes*, 57 A.L.R.2d 569, 592 § 10 (1958)).

Based upon the foregoing opinion, the decision of the Circuit Court of Hardy County is hereby affirmed.

Affirmed.