No. 2--01--1380  __________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

___________________________________________________________________

RICK NOTTOLINI, CHERYL ) Appeal from the Circuit

NOTTOLINI, and ALECIA NOTTOLINI, ) Court of Kane County.

) 

Plaintiffs and ) 

Counterdefendants-Appellees, )

)

v. ) No. 99--CH--588

)

)

LASALLE NATIONAL BANK, Trustee )

under Trust No. 39201, and )

WILLIAM DWYER, )

) Honorable

Defendants and ) Michael J. Colwell,

Counterplaintiffs-Appellants. ) Judge, Presiding.

___________________________________________________________________

JUSTICE KAPALA delivered the opinion of the court:

The instant controversy arose after defendants, LaSalle National Bank, trustee under trust No. 39201, and William Dwyer,  erected a fence between a water-filled quarry that they owned and a vacant lot that plaintiffs, Rick Nottolini, Cheryl Nottolini, and Alecia Nottolini, owned in South Elgin.  The fence prevented  plaintiffs from accessing the water-filled quarry from their property.  Plaintiffs thereafter filed a complaint in the circuit court of Kane County alleging that the defendants' quarry was a lake and that they had rights to use the lake because a portion of the water from the lake rested on their property.  Plaintiffs sought a declaration of their rights and an order requiring defendants to remove all fences and other barriers that interfered with their use of the lake.  Defendants filed a counterclaim, seeking a declaration that they had exclusive rights to the surface water in the quarry and an injunction prohibiting the plaintiffs from removing the fence defendants had installed.  Following a bench trial, the trial court granted plaintiffs' requested relief and denied defendants' request.  Defendants thereafter filed a timely notice of appeal.  We reverse.

The record reveals that in the early 1900s there existed a  limestone quarry in the South Elgin area near the Fox River.  The quarry ceased operations in 1925 and subsequently filled with water.  Title to the quarry, as well as some of the adjoining land, was acquired by defendant LaSalle National Bank. Defendant William Dwyer is the 100% beneficial owner of that trust.  Defendants allowed the landowners whose property adjoined the water-filled quarry to use the quarry for swimming.

In 1981,  plaintiffs purchased land adjoining the water-filled quarry.  Their deed of conveyance neither reserved nor granted them any right to use the water-filled quarry.  However, defendants permitted  plaintiffs to swim in the quarry.  Water from the quarry would frequently cover a few feet of plaintiffs' property so as to denude it of ordinary vegetation.

In 1997, a trespasser drowned in the quarry.  Thereafter, defendants requested that all adjacent landowners to the water-filled quarry erect fences to prevent unauthorized access to the quarry and another drowning.  Although most of the surrounding landowners erected a fence on their properties, plaintiffs did not.  Defendants then erected a fence between the quarry and  plaintiffs' property.  The fence denied plaintiffs access to the quarry.

On July 23, 1999, plaintiffs filed a complaint for a declaration of rights and a permanent injunction.  Plaintiffs based their complaint on the claim that they owned a portion of the lake bed adjoining defendants' lake and, therefore, had a right to the reasonable use and enjoyment of the surface waters of the entire lake.   Plaintiffs further alleged that defendants had deprived them of using the lake by erecting a fence between the lake and their property.  Plaintiffs requested a declaration of their rights to the entire surface of the lake and an injunction that affirmatively required defendants to remove all fences and other barriers that deprived plaintiffs of the use of the lake.

On August 24, 1999, defendants filed an answer to the complaint and a counterclaim.  Defendants maintain that their property was and continues to be a private quarry and not a lake and, therefore, adjacent property owners have no right to access the surface waters of the quarry without defendants' permission.  Defendants requested a declaration that they had exclusive rights to use and control the surface waters of the quarry.  Defendants also sought an injunction to  prohibit plaintiffs from removing or altering the fence that had been installed between the quarry and plaintiffs' property.

On August 9, 2001, the trial court conducted a trial on plaintiffs' complaint and defendants' counterclaim.  On September 13, 2001, the trial court ruled in favor of plaintiffs, holding that plaintiffs had the right to the reasonable use and enjoyment of the surface waters of the quarry.  The trial court found the quarry to be a lake, permanently enjoined defendants from interfering with plaintiffs' use of the surface waters, and ordered defendants to remove all fencing that interfered with  plaintiffs' access to the lake.  The trial court also denied all the relief that defendants requested in their counterclaim.

The trial court explained that the water-filled quarry was a lake and that the water in the lake exceeded the quarry boundaries and extended onto various adjoining lots including plaintiffs'.  The court found that the water on plaintiffs' property denuded that land of ordinary vegetation, which made it part of the lake bed.  As owners of a portion of the lake bed, plaintiffs had a right to the reasonable use and enjoyment of the surface waters of the entire lake provided that they did not unduly interfere with the reasonable use of the waters by the other owners of the lake.  See 
Beacham v. Lake Zurich Property Owners Ass'n
, 123 Ill. 2d 227 (1988).  The trial court found, therefore, that the fence defendants had erected between the lake and plaintiffs' property unduly interfered with plaintiffs' use of the lake.  Following the denial of their posttrial motion, defendants filed a timely notice of appeal.

On appeal, defendants' primary contention is that the trial court erred in finding that their water-filled quarry was a lake.  Defendants argue that the trial court's determination improperly diminishes their ownership rights in the quarry.  Specifically, defendants argue that the trial court's awarding plaintiffs surface water rights in the quarry deprives them of their right to exclusively use and manage the quarry.

A trial court's ruling in a bench trial will not be disturbed on appeal unless it is against the manifest weight of the evidence.  
Commercial Mortgage & Finance Co. v. American National Bank & Trust Co. of Chicago
, 253 Ill. App. 3d 697, 702 (1993).  For a ruling to be against the manifest weight of the evidence, the opposite result must be clearly evident.  
Hasselbring v. Lizzio
, 332 Ill. App. 3d 700, 704-05 (2002).

We note initially that no Illinois court has determined whether a water-filled quarry may be considered a lake.  Nor are we aware of any other foreign courts that have considered this precise question.  Similarly, no Illinois court has defined a lake generally.  However, other courts that have defined the term "lake" have described it as being a body of water of natural origin.  See  
Block v. Franzen
, 163 Neb. 270, 277, 79 N.W.2d 446, 450 (1956) (defining "lake" as a "reasonably permanent body of water substantially at rest in a depression in the surface of the earth, *** [with the] depression and body of water being of natural origin or a part of a watercourse"); 
Keener v. Sharp
, 95 S.W.2d 648, 652 (Mo. Ct. App. 1936) (a lake is an inland body of water of considerable size, occupying a natural basin or depression in the earth's surface below the ordinary drainage level of the region); 
Humphreys-Mexia Co. v. Arseneaux
, 297 S.W. 225, 229 (Tex. 1927) (water that comes to rest permanently in basin made by nature becomes a "lake" or "pond").  While these definitions are somewhat helpful, we prefer to define a lake as "a reasonably permanent body of water substantially at rest in a depression in the surface of the earth, if both depression and body of water are of natural origin or a part of a watercourse."  78 Am. Jur. 2d 
Waters
 §108 (2002).  Based on this latter definition, defendants' water-filled quarry is not a lake.  It is not a natural body of water existing in a natural depression in the earth.  Rather, it is entirely man-made and, thus, does not meet the definition of a lake as set forth herein.

    Moreover, riparian or littoral rights do not extend to artificial bodies of water, such as man-made lakes. See 
Ours v. Grace Property, Inc.
, 186 W. Va. 296, 301, 412 S.E.2d 490, 495 (1991); 
Publix Super Markets, Inc. v. Pearson
, 315 So. 2d 98, 100-01 (Fla. App. Ct. 1975).  As defendants' quarry at issue herein is clearly man-made, plaintiffs do not have any rights in it.  See 
Ours
, 186 W. Va. At 301, 412 S.E.2d at 495; 
Publix Super Markets, Inc.
, 315 So. 2d at 98.

Because we hold that defendants' water-filled quarry is not a lake, plaintiffs can have no lake bed or surface water rights in the quarry.  Instead, defendants retain complete ownership rights in the quarry.  See 
Save Our Little Vermilion Environment, Inc. v. Illinois Cement Co.
, 311 Ill. App. 3d 747, 749 (2000) (an owner of land is entitled to use the surface and all that is below it).  This ownership right includes the right to drain the quarry in order to allow the resumption of mining.  See 
Moore v. Bridgewater Township
, 69 N.J. Super. 1,23, 173 A.2d 430, 442 (1961) (an owner of a quarry has the right to excavate from his land).  This ownership right also includes the right to erect a fence around the water-filled quarry to keep others out.

Based on our determination that defendants' quarry is not a lake and that defendants retain complete ownership rights in the quarry, we find that the trial court's awarding plaintiffs surface water rights in defendants' quarry was against the manifest weight of the evidence.  We also find that the trial court erred in denying defendants' counterclaim for a declaration of their rights in the quarry and an injunction prohibiting plaintiffs from removing or altering the fence that had been installed between the water-filled quarry and plaintiffs' property.  

For the foregoing reasons, we reverse the judgment of the circuit court of Kane County and remand with directions that the trial court enter judgment in favor of defendants on their counterclaim.

Reversed and remanded with directions.

HUTCHINSON, P.J., and BYRNE, J., concur.