No. 3--06--0115

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| ROBERT L. ALDERSON and WANDA S. ALDERSON, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit Will County, Illinois |
| Plaintiffs/Counter-Defendants-Appellees, | ) ) ) | |
| v. | ) ) | |
| | ) ) | No. 03--CH--1872 |
| LEO E. FATLAN, IRENE AGAZZI, JOANN POLCYN, HOWARD E. REEVES, HENRY TAMELING, and THE FIRST NATIONAL BANK OF JOLIET as Trustee under a trust agreement dated March 21, 1981, and known as Trust No. 1855, | ) ) ) ) ) ) ) ) | |
| | ) | Honorable |
| Defendants/Counter-Plaintiffs-Appellants. | ) ) | Herman S. Haase Judge, Presiding |

JUSTICE HOLDRIDGE delivered the Opinion of the court:

Leo Fatlan, Irene Agazzi, Joann Polcyn, Howard Reeves, Henry Tameling and the First National Bank of Joliet in its capacity as trustee of Trust No. 1855 (hereinafter collectively referred to as Fatlan), the owners of a flooded quarry, appeal from a judgment of the circuit court of Will County granting summary judgment to adjacent landowners in a declaratory judgment action seeking right to use the surface waters of the quarry. Fatlan

maintains that the trial court erred as a matter of law in finding that the adjacent landowners have rights to the surface of the flooded quarry. We reverse and remand.

The facts herein are undisputed. Leo Fatlan mined a sand quarry beginning in 1966, purchased the quarry in 1968 and has owned the property in trust ever since. When active quarry operations ceased, the quarry gradually filled in with water. In 1998, Alderson purchased a parcel of property adjacent to the quarry. Alderson's property included a "sliver" of quarry which encroached onto his property. Alderson used the surface water of the entire quarry for recreational activities. At some point Fatlan erected a fence to prevent Alderson from accessing the surface of the flooded quarry. Alderson filed the instant action for declaratory judgment, seeking a declaration that he had rights to the reasonable use of the surface of the quarry, and seeking an injunction against Fatlan for removal of the fence. The trial court granted judgement in Alderson's favor and Fatlan now appeals.

This matter turns solely on whether the body of water at issue is a lake. If this body of water is a "lake" it is quite clear that Alderson has some rights to the entire surface. It is well-settled that owners of any portion of a lake bed have a right to the reasonable use and enjoyment of the surface waters of the entire lake, provided that such use does not unduly

2

interfered with the reasonable use of the lake by the other owners. <u>Beacham v. Lake Zurich Property Owners Association</u>, 123 Ill. 2d 227 (1988).

The question before the court is whether the body of water at issue is a "lake." In <u>Nottolini v.LaSalle National Bank</u>, 335 Ill. App. 3d 1015 (2003), the court addressed the issue of whether a man-made quarry which subsequently floods can be considered a lake and whether the rule articulated in <u>Beacham</u> should apply to a quarry. The <u>Nottolini</u> court held that man-made quarries are not "lakes" and that the rule articulated in <u>Beacham</u> should not apply. We agree with the analysis articulated by the court in <u>Nottolini</u>.

In <u>Nottolini</u>, the question before the court was the same as we must address in the instant matter, <u>i</u>.<u>e</u>., whether adjoining land owners to a flooded quarry have rights to the surface of the entire quarry. The <u>Nottolini</u> court articulated the following well-reasoned analysis:

> "We note initially that no Illinois court has determined whether a water filled quarry may be considered a lake. Nor are we aware of any other foreign courts that have considered this precise question. Similarly, no Illinois courts have defined a lake generally. However, other courts that have

3

defined the term "lake" have described it as being a body of water of natural origin. [citation omitted]. * * * we prefer to define a lake as "a reasonably permanent body of water substantially at rest in a depression in the surface of the earth, if both depression and body of water are of natural origin or a part of a watercourse."  78 Am. Jur. 2d Waters section 108 (2002).  Based on this latter definition, defendant's water filled quarry is not a lake.  It is not a natural body of water existing in a natural depression in the earth. Rather, it is entirely man-made and, thus, does not meet the definition of a lake as set forth herein."  Nottolini, 335 Ill. App. 3d at 1015.

The Nottolini court, having determined that a water-filled quarry was not a lake, noted well-settled law with regard to riparian and littoral rights to artificial bodies of water:

"Moreover, riparian or littoral rights do not extend to artificial bodies of water, such as man-made lakes. [citations omitted].  As defendants' quarry at issue herein is clearly

4

man-made, plaintiffs do not have any rights in it. <u>Nottolini</u>, 335 Ill. App. 3d at 1019.

In the instant matter, we see no material distinction between the facts herein and <u>Nottolini</u>. We find that the trial court erred as a matter of law. We reverse the trial court's entry of summary judgment in favor of Alderson and remand for entry of summary judgment in favor of Fatlan.

For the foregoing reasons, the judgment of the Will County circuit court is reversed and remanded for entry of summary judgment in favor of defendants.

Reversed and remanded with direction.

SCHMIDT, J., concurs, and MCDADE, J., dissents.

Filed February 8, 2007.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| ROBERT L. ALDERSON and WANDA S. ALDERSON, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit Will County, Illinois, |
| Plaintiffs/Counter-Defendants-Appellees, | ) ) ) | |
| v. | ) ) | |
| | ) ) | No. 03--CH--1872 |
| LEO E. FATLAN, IRENE AGAZZI, JOANN POLCYN, HOWARD E. REEVES, HENRY TAMELING, and THE FIRST NATIONAL BANK OF JOLIET as Trustee under a trust agreement dated March 21, 1981, and known as Trust No. 1855, | ) ) ) ) ) ) ) ) | |
| | ) ) | Honorable |
| Defendants/Counter-Plaintiffs-Appellants. | ) ) | Herman S. Haase Judge, Presiding. |

JUSTICE McDADE, dissenting:

In determining whether a water-filled quarry may be considered a lake, I believe that the

majority, and the Second District in *Nottolini v. LaSalle National Bank*, 335 Ill. App. 3d 1015,

782 N.E.2d 980 (2003), have made unnecessary and unwarranted distinctions between a *man-*

*made* water-filled depression and a water-filled depression of *natural origin*. For me, the real

question is: what possible relevance or significance attaches to whether the *hole* that forms the

bed of a body of water was created by nature or by man when determining how to apportion the

rights of co-owners of the bed to use the surface waters? Because *Nottolini* fails to address or

answer this question, I respectfully dissent from the majority's decision in the instant case, which relies exclusively and uncritically upon that holding.

The majority in the present case adopts the narrow definition announced in *Nottolini*, which defines a lake as "a reasonably permanent body of water substantially at rest in a depression in the surface of the earth, if both depression and body of water are of natural origin." *Nottolini*, 335 Ill. App. 3d at 1018, 782 N.E.2d at 982, citing Am. Jur. 2d *Waters* § 108 (2002). Although the second edition of American Jurisprudence shows that a distinction *can* be drawn between natural and man-made lakes, it does not demonstrate that drawing the distinction is either required or wise. Moreover, this definition ignores the reality of many "lakes" formed by rain water or flood water naturally filling a depression left after the discontinuation of mining operations or other human endeavors. In doing so, it leaves numerous land owners needlessly in limbo as to their rights to use bodies of water which form part of their property and which were specifically created or traditionally used for recreational purposes.

The definition adopted in *Nottolini* and by the majority simply creates too many questions to make its application practical or even feasible: Is a body of water created by human diversion of a river or other watercourse into a low-lying area a "lake?" What if the low-lying area was originally farm-land? Or an abandoned strip mine? If a depression created hundreds or thousands of years ago by some human effort becomes filled with water by an act of nature, is it a "lake?" How far back do we have to look to determine whether or not the depression was "natural?" Is a depression that is dug for the specific purpose of hosting recreational activities and is filled by rain and/or natural overflow from surrounding land a "lake?" Why should any of this matter in determining whether individuals who purchase property that includes part of a "man-made" lake

2

have a right to use surface waters in the area of the lake not owned by them without fear of arbitrary restriction by other owners?  In my opinion, this decision, in concert with *Nottolini*, will spawn much unnecessary litigation concerning the use of lakes that form the hub of many communities, subdivisions, and recreational developments.

It seems eminently logical to me that a large body of water surrounded by land is a lake regardless of whether the depression was formed by nature or man. Therefore, instead of blindly adopting the restrictive definition announced in *Nottolini*, I would define the term "lake" as "a considerable inland body of standing water." Webster's Ninth New Collegiate Dictionary 670 (2000).  This definition mirrors several other definitions found in both legal and lay dictionaries. For example, the DK Illustrated Oxford  Dictionary 454 (1998) describes a "lake" as "a large body of water surrounded by land."  West's Legal Thesaurus and Dictionary 446 (1985) says a "lake" is "a considerable body of standing water in a depression of land or in an expanded part of a river."  Finally, Black's Law Dictionary 876-77 (2004) provides, depending on how you count them, either five or seven definitions[1], not one of which incorporates the restrictions adopted by *Nottolini* and the majority.  Simply put, it defies logic to conclude that only a naturally "water-filled depression of natural origin" constitutes a "lake."  Moreover, I believe these more inclusive definitions better serve the expressed intent of the Illinois Supreme Court in *Beacham v. Lake*

---

[1]A considerable body of standing water in a depression of land or expanded part of a river. An inland body of water or naturally enclosed basin serving to drain surrounding country; or a body of water of considerable size surrounded by land; a widened portion of a river or a lagoon. [Citation] Body of water, more or less, stagnant, in which the water is supplied from drainage. [Citation] An inland body of water of considerable size occupying natural basin or depression in earth's surface below ordinary drainage level of region. [Citation] A large body of water, contained in a depression of the earth's surface, and supplied from the drainage of a more or less extended area."

*Zurich Property Owners Association*, 123 Ill. 2d 227, 526 N.E.2d 154 (1988), to promote the recreational use and enjoyment of lakes.

In *Beacham*, an individual owned part of the private, non-navigable bed of Lake Zurich. The owner and her boat rental business brought suit against the property owners association seeking a declaration that she and her licensees were entitled to the reasonable use of the entire lake, including the waters overlying those parts of the lake bed owned by the association's members. The trial court, relying on a long-standing "common law rule," dismissed the complaint, holding that the association could exclude the owner and her licensees from that part of the lake overlying the lake bed that it owned and controlled. The appellate court reversed, applying the approach of the "civil law rule" providing that ownership of a part of the bed of a private, non-navigable lake entitled owners and their licensees to the reasonable use and enjoyment of the surface waters of the entire lake provided they did not unduly interfere with the reasonable use of the waters by other owners and their licensees.

The supreme court analyzed the impact of the two rules and examined decisions from other states. *Beacham*, 123 Ill. 2d at 230-32, 526 N.E.2d at 157. In affirming the decision of the appellate court, it stated:

> "We conclude that the arguments supporting the civil law rule
>
> warrant its adoption in Illinois. Restricting the use of a lake to the
>
> water overlying the owner's lake bed property can only frustrate
>
> the cooperative and mutually beneficial use of that important
>
> resource." *Beacham*, 123 Ill. 2d at 232, 526 N.E.2d at 157.

Apparently the courts in *Beacham,* including the supreme court, did not find a determination of whether the lake was natural or somehow "man made" to be necessary to the resolution of the issue. While I recognize the parties did not raise the definitional issue and the court did not address it, the spirit and principles underlying the *Beacham* decision are still instructive when examining the impractical consequences the majority's decision will have upon individuals whose property includes a portion of a so-called "man-made lake" -- in this case, a water-filled quarry.

Here, it is uncontested that all the parties to this action have previously used the body of water for boating, skiing, or swimming. Nonetheless, the majority finds it appropriate to adopt a very restrictive definition that revokes previously accepted access and enjoyment by one owner of the lake bed. Significantly, however, this decision does not only affect the rights of the parties to this action; it also impacts numerous individuals who currently own property that includes a portion of a body of water which was specifically created for the purpose of community and recreational activities. This decision in effect deprives all of those individuals of the exact right the body of water was created to provide -- the reasonable use and enjoyment of the entire lake surface. Such an effect clearly violates the spirit and purpose of the supreme court's holding in *Beacham*.

Finally, it bears noting that the question of whether the flooded quarry here qualifies as a lake was addressed in our previous decision in *Fatlan v. Alderson*, No. 3-00-0890 (2001) (unpublished order pursuant to Supreme Court Rule 23 (166 Ill. 2d R. 23)). Specifically, we stated that "the quarry was closed and subsequently filled with water and *turned into a lake*." (Emphasis added.) *Fatlan v. Alderson*, No. 3-00-0890 (2001) (unpublished order pursuant to

5

Supreme Court Rule 23 (166 Ill. 2d R. 23)).  Although we did not specifically decide the issue on substantive grounds, I would still find that this language requires the application of the law of the case doctrine.  The law of the case doctrine prohibits the reconsideration of issues that have already been decided by a reviewing court in a prior appeal.  *In re Christopher K.*, 217 Ill. 2d 348, 365, 841 N.E.2d 945, 955 (2005).

Moreover, our previous statement that the quarry turned into a lake is justified by the fact that the parties themselves repeatedly referred to the body of water as a "lake" throughout the 2001 proceedings.  Generally, "allegations contained in a complaint are judicial admissions and our conclusive against the pleader."  *Calloway v. Allstate Insurance Co.*, 138 Ill. App. 3d 545, 549, 485 N.E.2d 1242, 1245 (1985).  Our previous decision, in reliance upon these judicial admissions, repeatedly refers to the water-filled quarry as a "lake."  Here, however, the majority completely ignores our decision and instead erroneously chooses to adopt the restrictive definition announced in *Nottolini* and find the body of water is not a lake.

For these reasons, I would affirm the judgment of the circuit court of Will County granting plaintiff's motion for summary judgment.  I, therefore, respectfully dissent from the majority's contrary decision.